**Kenneth RABIDEAU, Plaintiff,**

v.

**MANAGEMENT ADJUSTMENT BUREAU, Defendant.**

**No. 91–CV–102A.**

United States District Court, W.D. New York.

July 2, 1992.

UAW–Ford Legal Services Plan (Booker T. Washington, of counsel), Woodlawn, N.Y., for plaintiff.

Hodgson, Russ, Andrews, Woods & Goodyear (Peter A. Muth, Cheryl R. Storie, of counsel), Buffalo, N.Y., for defendant.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

The parties to this action executed a consent to proceed before the undersigned which was filed on October 10, 1991. This matter is presently before the following a non-jury trial held before the undersigned on November 19, 1991.

### BACKGROUND

Plaintiff commenced this action on February 21, 1991 alleging violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Plaintiff claims that two debt collection notices which he received from Defendant violated §§ 1692g and 1692e of the FDCPA. Plaintiff also alleges that the notices which were mailed to Plaintiff by Defendant dated February 12, 1990 and February 28, 1990, demanding payment of a debt allegedly owed by Plaintiff, violated § 1692e of the FDCPA by "overshadowing" and "contradicting" the validation notice required under § 1692g of the FDCPA. Additionally, in his complaint, Plaintiff originally claimed that telephone calls made by Defendant's employees to Plaintiff after the February 28th letter harassed Plaintiff in violation of 15 U.S.C. § 1692d and failed to provide, during such calls, the notice required by 15 U.S.C. § 1692e(11), but Plaintiff withdrew, at trial, these latter two claims relating to the telephone communications.

Plaintiff and Defendant stipulated to a non-jury trial before the undersigned which was commenced and completed on November 19, 1991.

## FACTS

On February 12, 1990, Plaintiff received the first of two letter communications from the Defendant relating to a debt of $176.40 which was allegedly owed by Plaintiff to Defendant's client, Kenmore Mercy Hospital. Both letters were addressed to Plaintiff at his home in Grand Island, New York.[1] The first letter referenced "your [Plaintiff's] account with our client: Kenmore Mercy Hospital" and listed an account number. There was also stated an item identified as "Principal" which listed a corresponding amount of $176.40. The light grade $8\frac{1}{2}'' \times 11''$ paper document consisted of two parts, with the upper part being a light blue colored paper, which comprised about two-thirds of the total area of the front side of the letter, and a lower part being of plain white paper separated from the upper part by a perforated line which permitted the recipient to tear off the lower part. Approximately two-thirds from the top of the document and immediately below the references to the Plaintiff and the Kenmore Mercy "account" information was the word "REFERRAL", highlighted by a row of small printed asterisks above and below the word. Directly below the word "Referral" was the following text in upper case ordinary lettering was approximately $\frac{1}{8}''$, or 8 point,[2] in height.

> YOUR CREDITOR HAS REFERRED YOUR ACCOUNT TO OUR COLLECTION AGENCY FOR IMMEDIATE COLLECTION.
> THIS IS A DEMAND FOR PAYMENT IN FULL TODAY. TO AVOID FURTHER CONTACT, RETURN THE BOTTOM SECTION OF THIS NOTICE WITH YOUR FULL PAYMENT TODAY!
> TO DISCUSS THIS DEMAND, CALL THE NUMBER LISTED BELOW.

Approximately $\frac{3}{8}''$ below this statement Defendant's telephone number is printed in the same size and style print as the above text. Immediately below this number and centered within the page was the word IMPORTANT. This word appeared as white lettering $\frac{1}{4}''$ in height within a solid blue field which formed a box $\frac{3}{8}''$ in height and $1\frac{3}{4}''$ in length. The bottom of the box abuts the perforated line described above. The blue portion of the face of the document extends into the lower detachable coupon-like portion over one quarter inch. Within this space and centered on the page appeared the following solid royal blue large block in $\frac{1}{8}''$ block lettering: PLEASE ENCLOSE THIS PORTION WITH YOUR PAYMENT. Below this statement, in the remaining "white" space of the tear-off portion of the letter, is additional printed information referring to the Defendant, Plaintiff's name and address, the date, a reference to the creditor, Kenmore Mercy Hospital, and the amount due to the creditor. This printing was of the same style and size as the Referral and Notification information described above.

In the lower right corner of the tear-off return portion of the letter was a rectangle approximately $2\frac{3}{4}'' \times \frac{7}{8}''$. The top one-quarter of the rectangle was a solid dark blue background containing the following in reverse white $\frac{1}{4}''$ lettering: "FOR YOUR CONVENIENCE...." Below this was approximately $\frac{1}{16}''$ in height or 7 point solid lower case lettering of the same solid dark blue color as the background referred to above which states as follows: "Your payment can now be made with your Visa Card or MasterCard." To either side and below this statement are the logos of each of the major credit cards, also in dark blue, with each logo being approximately $\frac{3}{8}''$ by $\frac{1}{4}''$ in size. Between each logo, in the same size and dark blue lettering as on the statement above, was the statement: "See reverse side for details." Just above the bottom of this tear-off portion, in blue capital letters approximately $\frac{1}{16}''$ inch or 7 point, was the follow-

---

1. Plaintiff was uncertain as to exact date of receipt of both letters. However, given the unlikelihood that mailing occurred prior to those dates (according to Defendant's computer records, Defendant's Exhibit 1, on Plaintiff's account, the letters were mailed on these dates) and allowing at least one day for delivery, for the purposes of this decision, the court finds the letters were received on February 13, a Tuesday, and March 1, 1990, a Thursday, respectively.

2. A point is a standard printing industry term denoting the sizes of particular type. There are approximately 72 points to an inch.

ing statement: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

The reverse side of the document is noteworthy in that its color is neither that of the light blue background or the plain white tear-off portion of the front, but rather of a light pastel-like grey shade. Similarly, the lettering is also of a generally grey color, albeit of a somewhat darker shade. In particular, in the upper portion of this reverse side, centered in a space of approximately 3″ × 3⅛″, the "validation notice" required by 16 U.S.C. § 1692g was printed in 1/16″ or 7 point grey print, slightly darker than the color of the paper itself.

Unless you notify this office in 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing in 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of the judgment, if any, and mail you a copy of the verification. If you request this office in writing in 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

If you notify our agency in writing to cease contacting you by telephone at our place of employment, no further contact shall be made.

If you refuse to pay the debt or you wish our agency to cease further communication and you so advise our agency in writing, we shall not communicate further with you except:

A. To advise you we tend to invoke specified remedies permitted by law or that we may invoke specified remedies which we ordinarily invoke.

B. To advise you our efforts are being terminated.

In the lower portion of the tear-off portion of the reverse side were three lines of text, in a darker shade of grey, which stated as follows:

*If you desire this method of payment please present your card at our business office, phone our office or fill out and sign this form.*

Below this statement were five lines which invited the addressee to provide a credit card number, choosing between Visa and MasterCard, a "Bank ID no.", cardholder signature, account name and purpose and amount. To the left of these spaces again appeared the Visa and MasterCard logos in the same darker grey shade as the three line statement quoted above.

Plaintiff received a second letter from Defendant dated February 28, 1990. The parties stipulated that this document was identical in every respect to the February 12, 1990 letter, except that, instead of the word "REFERRAL" appearing as in the first letter, the phrase "SECOND NOTICE" appeared. A copy of the February 28th letter is attached as an exhibit to this opinion. Additionally, instead of the text quoted above in the first letter, in discussing the "Referral" of the debt to be collected, the following statement appeared:

YOU HAVE BEEN PREVIOUSLY NOTIFIED TO CLEAR THE BALANCE, TO AVOID FURTHER COLLECTION MEASURES, YOUR REMITTANCE IN FULL MUST BE IN THIS OFFICE WITHIN (5) DAYS OF RECEIPT OF THIS NOTICE.

SHOULD WE NOT HEAR FROM YOU, WE WILL ADVISE THE CREDITOR THAT YOU HAVE REFUSED TO PAY.

Plaintiff testified that after he received the February 12, 1990 letter from Defendant, but took no immediate action because he believed the invoice had been paid by his health insurance carrier. However, after receiving the second letter, he called the creditor, Kenmore Mercy Hospital, and was told that the bill had not been paid because a supposedly incorrect account number had been provided to the insurance carrier.

Plaintiff also claimed that Defendant's employee, a Mr. Petco, phoned him several times on March 1, 1990 and thereafter demanding payment. Although Plaintiff's recollection of these subsequent events was less than clear, the weight of the evidence supports the conclusion that Plaintiff did, in fact, receive both of the letters sent by Defendant prior to receiving the telephone calls. Questions of credibility surrounding the exact timing and substance of the telephone calls were rendered moot by

virtue of Plaintiff's withdrawal of his harassment claim under 15 U.S.C. § 1692d at trial.

Plaintiff, who completed two years of college, was able to read and understand the two letters, although, as to the information on the reverse side of the letters, his understanding was "not so good" and he was unsure as to whether he actually read the February 28, 1990 letter. However, Plaintiff also testified that he "usually reads" his mail. The court again finds that the weight of evidence supports the conclusion that both letters were received and read by Plaintiff.

Plaintiff's expert, Marian Deutschman, who holds a Ph.D in organizational communication, testified at some length regarding the inadequacy of the Defendant's form of letter notice. In particular, she pointed out that the required validation information on the reverse side of the letters was only 1/10" or 7 point in height. She also testified that when examined under magnification (which was demonstrated to the court during the trial) the print on the reverse side of the letters which carried the validation information was actually comprised of multiple "dots" of ink rather than a solid line. Dr. Deutschman further explained that the information could easily have been printed in 9 or 12 point type for improved readability and that text books and popular magazines are typically printed in 8 or 9 point type. Dr. Deutschman's other criticisms of the document as an ineffective communications instrument included the less legible dot matrix type print style of the validation notice, the lack of opacity of the paper itself allowing "bleeding", *i.e.*, characters on one side which can be seen through the paper thereby hindering legibility and making the information harder to read.

Dr. Deutschman further testified that, in her opinion, the information on the front side of the February 28th letter demanding payment within five days contradicted the validation statement on the reverse side. She also testified that, in her opinion, the relatively small size of the print on the face of the notice which states that there is important information on the reverse side of the notice, taken together with the small print size and lack of clarity of the validation notice itself, "discourages" the recipient from attempting to read the information on the reverse side.

On cross-examination, Dr. Deutschman agreed that the large word "Important" on the front of the letter was in the wrong position if it was intended to draw the readers attention to the validation information on the reverse side. She concluded, however, that the use of the contrasting large type set for this word naturally would draw the recipient's attention to the larger print on the reverse side dealing with the credit card payment method option, and not to the validation notice.

Mr. Charles Nail, Defendant's Executive Vice President, testified that the text of the validation notice used by Defendant was provided by the American Collections Association, that the Defendant had no intention to hide information from consumers, and that the "bleeding" effect on the paper was simply a function of the use of a computer printer to produce the different message on the two pieces of standard collection correspondence rather than any illegal purpose designed to render the validation notice less readable to consumers.

Defendant offered further testimony regarding its training of collection officers, record keeping system and its record of contact with Plaintiff. However, as Plaintiff has withdrawn his harassment claim, this testimony is no longer relevant, and will not be discussed in further detail.

Plaintiff interposed several arguments to support his basic claim that the notices violate the FDCPA: (1) the relatively small print size of the validation notice and lack of sufficient contrast to the paper juxtaposed with larger and more prominent printing of payment information, making it easier to read information concerning payment options, results in the overshadowing of the required validation notice in violation of 15 U.S.C. § 1692g and the notice required by § 1692e(11); (2) the use of light grey print in printing the validation notice on the reverse side of the letters renders the notice essentially unreadable and there-

**1092**

by fails to constitute the notice required under § 1692g; (3) the collection letters fail to adequately convey to the least sophisticated consumer that the required validation information is provided on the reverse side; (4) the required validation notice is overshadowed by the contradictory and misleading statement demanding immediate payment and representation that further contact would only be avoided by making full and immediate payment; and (5) that the Defendant's validation notice violates § 1692g by demanding payment in less than thirty days of the notice.

## DISCUSSION

■ The FDCPA was enacted "to protect consumers from unscrupulous debt collection practices ... without imposing unnecessary restrictions on ethical debt collectors." In particular, the legislation was intended "to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S.Rep. No. 382, 95th Cong., 1st Sess. 1–2, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1696. See also, 15 U.S.C. § 1692(a)–(e) (legislative purpose is to eliminate abusive, deceptive and unfair debt collection practices including misrepresentation). Section 1692g(a) of the FDCPA requires that, within five days of the initial communications from a debt collector, the consumer will be provided a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

If the consumer disputes the debt or requests, in writing, the name of the original creditor, then the collector must halt all collection efforts until it mails verification of the debt or the creditor's name to the consumer. 15 U.S.C. § 1692g(b).[3] However, absent such dispute or notification during the thirty day validation period, the debt collector may continue its collection efforts. See, *Smith v. Financial Collection Agencies*, 770 F.Supp. 232, 236 (D.Del. 1991).

Section 1692e of the FDCPA prohibits debt collectors from making certain false or misleading representations or using false or misleading means in connection with the collection of any debt. Subsection 1692e(11) specifically prohibits, except in circumstances not relevant to this case, the failure to disclose clearly, in all communications made to collect a debt, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.

In this case, Plaintiff claims that Defendant's referral notice and payment information overshadows and contradicts the required validation notice and thereby violates both § 1692g and § 1692e(11). Defendant contends that, since the information required by these two sections of the statute is provided on the reverse side of their form letters, there are no violations.

---

**3.** Although not pertinent to the merits of this case, the court notes that there have been questions as to whether § 1692g(a)(3) requires a writing to dispute the debt. See, *Graziano v. Harrison*, 950 F.2d 107 (3d Cir.1991) (§ 1692g construed to permit debt collector to require written dispute of debt.); *Higgins v. Capitol Credit Services, Inc.*, 762 F.Supp. 1128, 1135 (D.Del.1991) (subsequent notice referring only to written demand for verification not confusing; confusion results from differences among provisions of § 1692g(a)(3), (4).)

However, as Defendant itself recognizes, "[s]imply providing the language does not necessarily insure compliance with the FDCPA. Courts will require that the warning and validation language not be given in such manner that the least sophisticated debtor would not be assured of receiving it." Defendant's Trial Memorandum dated November 18, 1992 at p. 5, (citing, *Read v. Amana Collection Services,* 1991 WL 5155 (W.D.N.Y.1991) (Elfvin, J.)). "The statute [FDCPA] is not satisfied merely by inclusion of the required debt validation notice; the notice Congress required *must be conveyed effectively* to the debtor ... [i]t must be large enough *to be easily read* and *sufficiently prominent to be noticed*—even by the least sophisticated debtor ... [f]urthermore, to be effective, the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communications from the collection agency." *Swanson v. Southern Oregon Credit Services, Inc.,* 869 F.2d 1222, 1225 (9th Cir.1988) (emphasis added); *Riveria v. MAB Collections, Inc.,* 682 F.Supp. 174, 177 (W.D.N.Y.1988) (Larimer, J.) (strategic placement of § 1692g validation notice on reverse side of initial collection letter without proper reference on front side is, in effect, no notice). Accord, *Read, supra.* A validation notice satisfies the statute if the information given in the notice is large enough to be easily read and sufficiently prominent to be noticed, even by the least sophisticated consumer. *Baker v. G.C. Services Corp.,* 677 F.2d 775, 778 (9th Cir.1982).

In *Riveria, supra,* Judge Larimer also pointed out that the failure to provide appropriate language on the reverse side of a notice, calculated to alert the reader that the information, *i.e.,* a validation notice, was directed to her or him, was also evidence of an intentional violation of the statute. Holdings under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* persuasively suggest that the required disclosures under that statute are not clearly and conspiciously made if a consumer must look in more than one place for them. See, *Riveria, supra,* at 177 (citing cases). See also, *Ost v. Collection Bureau, Inc.,* 493 F.Supp. 701, 703 (D.N.D.1980) (communication must not "evade the spirit of the notice statute, and mislead the debtor into disregarding the notice.").

It is clear that the precise notifications required by Congress in the statute must occur in "all communications." *Pipiles v. Credit Bureau of Lockport,* 886 F.2d 22, 26 (2d Cir.1989). It is equally clear that, as to a violation of § 1692e and subparagraph (11), both the fact that an attempt to collect a debt is being made and that any information so obtained during the collection procedure will be used for that purpose, must be clearly stated. *Pipiles, supra.*

Although the FDCPA does not prescribe any particular form sequence, location or typesize, (see, *Riveria, supra,* at 176), the notice in question must be evaluated against the broad remedial purposes of the statute and the statutory language itself. *Pipiles, supra,* at 26; *Swanson, supra,* at 1225; *Riveria, supra,* at 176. Here, while the required notice under both §§ 1692g and e(11) are contained in the documents, they appear on the reverse side of both form letters sent by Defendant. However, the required information is printed in an odd configuration, centered in the upper two-thirds of the reverse page of the initial communication and follow-up. It is printed in a light grey ink on a light shade of grey computer paper, making it difficult to read. Further, the typesize is barely 7 point (closer to six point by actual measurement), or less than ¹⁄₁₀" in size. The court takes judicial notice that the newsprint type for the local daily newspaper in this community is 9.4. In these circumstances, I conclude that the form used in this case fails to adequately apprise a least sophisticated consumer of the required notices.

Because Defendant's form, unlike the facts in *Riveria,* does purport to direct a consumer to the reverse side, our analysis cannot end there. The notice on the front side directing the reader to the reverse side of the letter is of a small, albeit dark blue ink, type set as compared with the other information presented. But it is

also at the very bottom of the paper, coincidentally within the tear-off portion of the letter to be used by the consumer in electing the credit card payment option. The reader, therefore, is just as likely to go to the reverse side of that portion of the letter which, as described above, contains an eye-catching bold typeset in larger than 12 point lettering giving directions on how to make a credit card payment of the bill. In this circumstance, the suggestion, "See Reverse Side for Important Information," which Defendant argues refers to the validation notice is, at best, ambiguous and, at worst, misleading. In either case, it is inadequate because it is neither prominent nor does it effectively convey to the least sophisticated consumer that important congressionally created rights applicable to his or her situation appear on the reverse side of the letter.

Plaintiff vigorously, and correctly, contends that the format of the document, together with the strong and, by comparison, clear statements on the form, including the large block lettered word IMPORTANT immediately above it, directs the recipient's attention to information concerning the credit-card method of payment. In this circumstance, the form represents ". . . an attempt on the part of the collection agency to evade the spirit of the notice statute and mislead the debtor into disregarding the [required debt validation] notice." *Swanson, supra*, at 1226 (quoting, *Ost, supra*). A lawyer would probably have limited difficulty discovering and understanding the validation notice and the statement required by § 1692e(11) as printed on Defendant's form. But the standard is, of course, whether the least sophisticated consumer would discover and understand the required notices. Given the protective purpose of the statute and the substantial deficiencies in the particular combination of form, paper color and quality, layout, print style, and ink color chosen by Defendant, the letter notice fails, by a wide margin, to meet this legal standard.

▮▮ As noted earlier in this discussion, Plaintiff argued that Defendant's collection letters also violated the FDCPA because the demand for immediate payment overshadowed and contradicted the validation notice. See, *Swanson, supra.* Both notices sent to Plaintiff run afoul of this judicial construction of the FDCPA's requirements. The first notice of February 12, 1990 states that immediate payment will avoid further contact. This is contradictory to the validation notice rights available to the consumer and a misleading statement as immediate payment is not the only step which may then be taken by Plaintiff to avoid further contact. See, 15 U.S.C. § 1692g(b). The second notice of February 28, 1990 advises that "to avoid further collection measures," the debt must be paid within five days. Assuming that the February 12th letter was received on February 13, 1990 and the second notice received March 1, 1990, Plaintiff still had at least until March 15, 1990, or fifteen days remaining within the thirty day validation period, to contact Defendant and dispute the debt. While continuing efforts to collect the debt may occur within the thirty day period provided under § 1692g, those efforts must terminate for at least that period from the date such validation demand is received by the debt collector, within the thirty day period, until the date the information demanded is provided to the debtor. See, 15 U.S.C. § 1692g(b). Defendant's collection letters, by demanding immediate payment without adequate notice of the Plaintiff's right to dispute the underlying debt, contradicted the validation notice contained in the letter. See, *Graziano, supra.*

▮▮ Defendant relied on several cases, including *Miller v. Payco–General American Credits, Inc.*, 943 F.2d 482 (4th Cir. 1991). In that case, the phrase, "Notice: See reverse side for important information", appeared in letters ⅛" high, as here, at the very bottom of the front page of the document. This statement was printed in white against a red background. The reverse side of the document contained four printed paragraphs containing the validation notice, also, as in the case at bar, in grey ink. While the instant case lacks the characteristics of "[s]creaming headlines, bright colors and huge lettering" demand-

ing immediate payment in full which contributed to the court's finding of a violation of the FDCPA in *Miller,* nevertheless the court's observation in that case that there are "numerous and ingenious ways of circumventing § 1692g under a cover of technical compliance" is applicable to the instant case. Further, the facts in *Smith v. Financial Collection Agencies,* 770 F.Supp. 232 (D.Del.1991), also relied upon by Defendant, do not appear to be similar to this case. See, *Smith, supra,* at 238 (validation notice language on front of letter was "in type which [was] not microscopic, illegible or otherwise onerous to read"). In any event, the test is not whether the required notifications were so deficient as to be "microscopic," "illegible" or "onerous to read." Compare *Swanson, supra, Riveria, supra, Ost, supra.*

## DAMAGES

■ Under 15 U.S.C. § 1692k(a)(1) actual damages may be awarded. As there was no proof of actual damages to the Plaintiff in this case, the court may award additional statutory damages, under 15 U.S.C. § 1692k(a)(2)(A), not to exceed $1,000 for each violation, taking into account, among other things, the frequency, persistence and nature of a debt collector's non-compliance and whether such non-compliance was intentional. Although there is no direct evidence of an intentional effort to violate the statutory requirements, this court finds that, despite Defendant's purported attempt to comply with the statute, the deficiencies in its choice of layout, along with its choice of how to convey that information discussed above, justifies the conclusion that there was at least some motive to draw the consumer's attention away from the required statutory notices. The fact that the same collection form used by this Defendant was found to violate the FDCPA in another recent case in this court, (see, *Siler v. Management Adjustment Bureau,* No. 91–65E, 1992 WL 32333, dated February 18, 1992 (Elfvin, J.)), suggests some degree of persistency. Accordingly, I conclude that in order to encourage full compliance with the FDCPA a meaningful damage award is appropriate.

Therefore, Plaintiff is entitled to a judgment on his claims against Defendant pursuant to the FDCPA that Defendant violated 15 U.S.C. §§ 1692e(11) and 1692g. Judgment shall be against Defendant in the amount of $500 on each claim, for a total of $1,000. The court reserves decision on Plaintiff's request for attorney fees and costs under 15 U.S.C. § 1692k pending receipt of Plaintiff's petition for same.

## CONCLUSION

Based on the foregoing analysis, the court directs that judgment be entered for the Plaintiff and against the Defendant in the amount of $1,000. As to attorney's fees and costs, the court reserves decision pending receipt of Plaintiff's application for such fees.

SO ORDERED.

**1096**

DEFENDANT'S
EXHIBIT
*A*
9-18-91

02/28/90

MAILING ADDRESS:
P.O. BOX 1166
BUFFALO, NEW YORK 14240
(716) 691-5400

08117464-1-71
RABIDEAU, KENNETH
62 WARD PARK

GRAND ISLAND, NY   14072

RE YOUR ACCOUNT WITH OUR CLIENT:
KENMORE MERCY HOSPITAL - OP
ACCT#: 2184959 786.52

FOR: RABIDEAU, KENNETH

PRINCIPAL      $176.40

----------
TOTAL DUE      $176.40
----------

```
*******************
* SECOND NOTICE *
*******************
```

YOU HAVE BEEN PREVIOUSLY NOTIFIED TO CLEAR THE BALANCE.
TO AVOID FURTHER COLLECTION MEASURES, YOUR REMITTANCE
IN FULL MUST BE IN THIS OFFICE WITHIN FIVE (5) DAYS OF
RECEIPT OF THIS NOTICE.

SHOULD WE NOT HEAR FROM YOU, WE WILL ADVISE THE CREDITOR
THAT YOU HAVE REFUSED TO PAY.

TEL. (716)691-5400

**IMPORTANT**

PLEASE ENCLOSE THIS PORTION WITH YOUR PAYMENT

08117464-1-71
MANAGEMENT ADJUSTMENT BUREAU
P.O. BOX 1166
BUFFALO          NY   14240

02/28/90
KENMORE MERCY HOSPITAL - OP
ACCT#: 2184959 786.52

*Mr Petco*

TOTAL DUE     $176.40

RABIDEAU, KENNETH          08117464-1-71
62 WARD PARK

GRAND ISLAND, NY   14072

**For your convenience...**
your payment can now be made with
Visa Card or MasterCard.
See reverse side for details.

00767-21

Unless you notify this office in 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing in 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of the judgment, if any, and mail you a copy of the verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

If you notify our agency in writing to cease contacting you by telephone at your place of employment, no further contact shall be made.

If you refuse to pay the debt or you wish our agency to cease further communication and you so advise our agency in writing, we shall not communicate further with you except:
A.  To advise you we intend to invoke specified remedies permitted by law or that we may invoke specified remedies which we ordinarily invoke.
B.  To advise you our efforts are being terminated.

---

# *If you desire this method of payment please present your card at our business office, phone our office or fill out and sign this form.*

Credit Card #_____ Exp. Date_____

*Check One* ☐ Visa Card or ☐ MasterCard

Bank ID No._____

Signature of Cardholder_____

For payment of the account of _____

Amount _____