Miriam SPIRA, Plaintiff,

v.

ASHWOOD FINANCIAL, INC., Defendant.

No. 04–CV–4607(ILG).

United States District Court, E.D. New York.

Feb. 28, 2005.

Adam J. Fishbein, Woodmere, NY, for Plaintiff.

David J. Gold, David J. Gold, P.C., New York, NY, for Defendant.

### MEMORANDUM AND ORDER

GLASSER, District Judge.

### INTRODUCTION

Plaintiff Miriam Spira ("Plaintiff" or "Spira") filed this putative class action against defendant Ashwood Financial, Inc. ("Defendant" or "Ashwood") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692 *et seq.* Pending before the Court is Plaintiff's motion to dismiss Defendant's counterclaim for attorney's fees, Defendant's cross-motion for summary judgment and Plaintiff's cross-motion for partial summary judgment. For the reasons set forth below, the Court grants Defendant's cross-motion for summary judgment and Plaintiff's crossmotion to dismiss the counterclaim and denies Plaintiff's cross-motion for partial summary judgment.

### BACKGROUND

The following facts are undisputed. Defendant is in the business of collecting debts owed to others. (Compl.¶ 5). It mailed a collection letter to Plaintiff, dated September 13, 2004 (the "First Letter"), demanding payment of $29.08 on behalf of NYUMC Pediatric Cardiology. That letter, written on the letterhead of Ashwood, states as follows:

> Dear Miriam Spira:
>
> The above past due account has been placed with us for collection. **NOTICE:** It is the policy of this agency to report all unpaid accounts to a major credit bureau after 30 days of this notice. Protect your credit by paying this debt. Thank you for your anticipated cooperation.

(Compl.¶ 12).

Under the signature line, in the same size print, the First Letter continues as follows:

> The purpose of this communication is to collect the debt which is the subject of this letter. Any information obtained will be used for the purpose of collecting the debt.
>
> Unless within (30) days after receipt of the first communication from this office you dispute the validity of the debt or any portion thereof, it will be assumed to be valid. If you notify this office in writing within the thirty (30) day period after receipt of the first communication from this office that you dispute the

debt or any portion thereof, this office will obtain verification of the debt and a copy of such verification, along with the creditor's name and address, will be mailed to you by this office. If you request in writing, within the thirty (30) day period, the name and address of the original creditor, if different from the current creditor, this office will provide you with the requested information. This is required under the Fair Debt Collection Practices Act.

(Compl.¶ Exh.1). This language is known as a "validation notice" under the FDCPA.

Defendant sent Plaintiff a follow-up letter, dated October 12, 2004 (the "Follow-up Letter"), twenty-nine days later. That letter, like the First Letter, was written on Ashwood letterhead, and states as follows:

Dear Miriam Spira,

You have failed to respond to our previous notice advising you of the delinquency of your account. It is our intent to pursue collection of this debt through every means available to us. We extend this opportunity to settle this debt in a friendly manner. You may either send your payment in full to Ashwood or you must call 1–800–851–5736 at once.

(Compl.¶ Exh.2).

Under the signature line,[1] the Follow-up Letter states as follows: "The purpose of this communication is to collect the debt which is the subject of this letter. Any information obtained will be used for the purpose of collecting the debt." (*Id.*)

Shortly after receiving the Follow-up Letter, Spira commenced this action. In the complaint, she contends that Ash-

wood violated the FDCPA in two ways. First, she alleges that the collection letters violate 15 U.S.C. § 1692g because they contradict and overshadow her right to dispute the debt and seek verification documents.[2] Second, she alleges that they violate 15 U.S.C. §§ 1692e(5) & (10) by threatening "to take any action that cannot legally be taken or that is not intended to be taken," and by the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Defendant denies the material allegations of the complaint. Plaintiff initiated motion practice before the Court by moving to dismiss Defendant's counterclaim for attorney's fees. Defendant did not oppose Plaintiff's motion to dismiss but instead cross-moved for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Ashwood raises two arguments in support of its motion. First, it argues that there has been no violation of 15 U.S.C. § 1692g because the collection letters contain a proper validation notice, and they do not contradict or overshadow Spira's right to contest the debt within thirty days of her receipt of them. (*See* Bailey Aff. ¶¶ 6–13). Second, Ashwood argues that they do not violate 15 U.S.C. §§ 1692e(5) and (10) because they do not contain any false statements, threats or deceptive practices in connection with Defendant's collection efforts. In response to Defendant's cross-motion, Plaintiff cross-moved for partial summary judgment, asserting that the language in the First Letter overshadows and contra-

---

1. Both the First Letter and Follow-up Letter were signed by a "Mrs. Green," with "CITY OF NEW YORK LICENSE NUMBER # 1099206." (Compl.Exh.¶¶ 1–2). Both letters were addressed to Plaintiff at 1363 40th Street, Brooklyn, New York, and specified an

account number of 279564, along with Defendant's return address. (*Id.*)

2. The terms "overshadow" and "contradict" are terms of art under the FDCPA. *See infra* at 7.

dicts the validation notice. Plaintiff argues that the Follow-up Letter, sent within 30 days of the First Letter, violates 15 U.S.C. § 1692g, because it does not contain a validation notice, and contradicts and overshadows the validation notice in the First Letter. Plaintiff further asserts that the collection letters are, as a matter of law, false, deceptive and/or threatening in violation of 15 U.S.C. §§ 1692e(5) and (10).

## DISCUSSION

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue as to a material fact exists when there is sufficient evidence favoring the nonmoving party such that a jury could return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, the nonmoving party "may not rest upon the mere allegations or denials" of its pleadings; rather, its response must go beyond the pleadings to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, when evaluating a motion for summary judgment, "[t]he courts must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. American Piles, Inc.*, 138 F.3d 81, 87 (2d Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### II. Plaintiff's Procedural Arguments

■ As an initial matter, Plaintiff argues that Defendant's cross-motion for summary judgment should be denied because it neglected to submit a statement of material facts with its motion papers as required under Local Rule 56.1(a) of the Eastern District of New York.[3] Despite the Court's reluctance to disregard the rules of this District, it will overlook such inadvertence and decide the motions upon the record presented which is straightforward. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73–74 (2d Cir.2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules"). With respect to the issues presented by the parties, including whether language in a debt-collection letter overshadows or contradicts other language in an impermissible fashion, they are questions of law. *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996).

Plaintiff also argues that the Court should defer ruling on Defendant's cross-motion for summary judgment in order to permit her to conduct further discovery. This application is unpersuasive solely in light of the discovery which Magistrate Judge Mann supervised, directing Defendant, on Plaintiff's motion, to respond to "pending discovery demands that pertain to issues involved in the parties' dispositive motions." (Memorandum and Order, dat-

---

**3.** That rule states "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement *may* constitute grounds for the denial of the motion." (emphasis added).

ed January 11, 2005, docket entry number 17).

■ Further, "a party resisting summary judgment on the ground that it needs discovery must submit an affidavit showing (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) efforts made to obtain those facts, and (4) why the party was unsuccessful in those efforts." *Rumpler v. Phillips & Cohen Associates, Ltd.*, 219 F.Supp.2d 251, 255 & n. 2 (E.D.N.Y. 2002) (Glasser, J.) (citation omitted). As in *Rumpler*, Plaintiff's Rule 56(f) affidavit fails to satisfy this standard, and as set forth above, her claims can be resolved as a matter of law and thus no further discovery is needed as to these claims.[4]

### III. Alleged Violation of the Validation Notice

■ The Court next examines the parties' contentions relating to the validation notice. The FDCPA was designed by Congress "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e) (2004); *see also Alibrandi v. Financial Outsourcing Services, Inc.*, 333 F.3d 82, 85 (2d Cir.2003); 1977 U.S.Code Cong. & Admin. News at 1695–96 (the Act was intended "to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid"). Section 1692g(a) of the FDCPA requires that a debt collector who sends a letter requesting payment of a

debt provide the alleged debtor with a "validation notice" in its initial communication, or no later than five days thereafter. A debt collector violates the FDCPA if the notice "contains language that overshadows or contradicts other language informing [the] consumer of her rights." *Russell*, 74 F.3d at 34 (citation and internal quotation omitted).

■ In determining whether Section 1962g has been violated, the Second Circuit applies "an objective standard measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector." *Russell*, 74 F.3d at 34. This standard requires the Court to analyze the collection letters from the perspective of a debtor who is uninformed, naive, or trusting, but is making basic, reasonable and logical deductions and inferences. *Id.* The least sophisticated consumer standard therefore "ensures the protection of all consumers," but also "protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir.1993). "This least-sophisticated consumer standard best effectuates the Act's purpose of limiting the suffering and anguish often inflicted by independent debt collectors." *Id.* at 1318 (internal quotations and citation omitted).

■ That a collection letter contains a validation notice does not preclude a finding that it was overshadowed or contradicted by other language. *See DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir.2001) ("Even if a debt collector conveys the required information, the collector nonetheless violates the [FDCPA] if it conveys that information in a confusing or contradictory fashion so as to cloud the

---

4. The fact that Plaintiff has filed a cross-motion for partial summary judgment on the very same claims for which she argues she needs further discovery demonstrates the utter weakness of her Rule 56(f) application.

required message with uncertainty"). "A notice is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights" or is "reasonably susceptible to an inaccurate reading." *Russell,* 74 F.3d at 35; *see also Savino v. Computer Credit, Inc.,* 164 F.3d 81, 85 (2d Cir.1998) (same).

■ It is undisputed that the First Letter contains the requisite language of section 1692g(a). Plaintiff contends that the validation notice is overshadowed or contradicted by the following: "**NOTICE:** It is the policy of this agency to report all unpaid accounts to a major credit bureau after 30 days of this notice. . . . Protect your credit by paying this debt." (First Letter, dated September 13, 2004). Plaintiff seizes on language in *McStay v. I.C. System, Inc.,* 308 F.3d 188, 191 (2d Cir. 2002), in which the Second Circuit stated that the consumer's argument—that a debt collector's "threat to report her debt to the National Credit Reporting Agencies after thirty days if the account was not 'paid in full or otherwise closed,' particularly when coupled with the observation that '[t]his may hinder your ability to obtain credit in the future,'" overshadowed and contradicted the validation notice— was a "significant one." The court in *McStay* did not decide this issue because the consumer failed to raise it before the district court. *Id.*

The Court concludes that *McStay* is inapposite for two reasons. First, as Plaintiff recognizes, the statements upon which she relies were *dicta.* Second, even if the *dicta* in that case could be interpreted to mean that the consumer's argument had merit, the language in the First Letter is significantly different from the language in the letter in *McStay.* That letter stated that the debt collector's decision to report the debt to the "National Credit Reporting Agencies" was based solely on how the consumer would respond to the collection letter. 308 F.3d at 189. In contrast, Defendant notified Spira of its policy of reporting all "unpaid accounts" to a major credit bureau after 30 days of the notice, regardless of how, if at all, Plaintiff responded to the First Letter.[5] It also did not state that Spira's failure to pay the debt and forego her right to contest it would "hinder [her] ability to obtain credit in the future" as the letter in *McStay* did. Rather, the First Letter merely advised Spira to "[p]rotect [her] credit by paying this debt." Perhaps most significantly, the Court is unpersuaded that the language in the First Letter confuses, let alone that it contradicts or overshadows, the validation notice. The validation notice was presented in the same font, size and type-face as the first three paragraphs of the First Letter that Spira contends overshadow and contradict the validation notice.

■ An actual or apparent contradiction between the second and third paragraphs and those containing the validation notice does not exist. Spira was given two options: either (1) pay the debt and avoid further action, or (2) notify Ashwood within thirty days after receiving the collection letter that she disputes the validity of the debt. As written, the First Letter does not suggest that Spira forego the second option in favor of payment. To the extent that the First Letter states what might happen after 30 days, this could not have confused even an unsophisticated consum-

---

5. Plaintiff argues that she was "led to believe that her credit will be impaired even within the thirty day dispute period." (Pl. Mem. at 4–5). However, this assertion is disingenuous in light of the plain language of the First

Letter which states that "[i]t is the policy . . . to report all unpaid accounts to a major credit bureau *after* 30 days of this notice." (Sept. 13, 2004 letter) (emphasis added).

er that she had a right to dispute the debt, whether she had paid her bill or not, and how she could exercise that right.[6] The Court thus finds the least sophisticated debtor would not be induced to overlook her statutory right to dispute the debt within thirty days.[7]

Plaintiff argues that the Follow-up Letter also violates section 1692g(a). Initially, the Court notes that Defendant's argument that the second collection letter was sent on or after Plaintiff's 30–day window to either pay or dispute the debt is disingenuous in light of the dates of those events—September 13, 2004 and October 12, 2004. (Bailey Aff. ¶¶ 11–15). The fact that Plaintiff may have faxed the First Letter to her attorney on September 19, 2004, and the Follow-up Letter a month later, on October 19, 2004, has no relevance.[8] (*Id.*) Assuming the letters were sent on the dates indicated on them, Plaintiff received them less than 30 days apart, and thus section 1962g is applicable to the Follow-up Letter. *See generally Rabideau v. Management Adjustment Bureau*, 805 F.Supp. 1086, 1089 & n. 1 (W.D.N.Y. 1992) ("allowing at least one day for delivery" of collection letter in FDCPA claim and 30–day period is triggered by receipt of same); *cf.* Fed.R.Civ.P. 6(e) (service by mail generally adds 3 days to any prescribed period to act).

That the Follow-up Letter did not contain a validation notice, however, is of no consequence. Section 1962g(a) merely requires a validation notice to be sent to a consumer on or before five days after an initial communication is sent by the debt collector. There is nothing in the statute which requires follow-up letters to contain the validation notice, including letters that are mailed within the validation period. Indeed, absent notification from the consumer that she disputes the debt, "the debt collector may continue its collection efforts" during the validation period. *See Rabideau*, 805 F.Supp. at 1092. Further, the Act contains at least one provision which requires certain language to be communicated to a debtor in every single communication sent by the debt collector. *See* 15 U.S.C. § 1692e(11) (both the fact that an attempt to collect a debt is being made and that any information so obtained during the collection procedure will be used for that purpose must be stated in every communication from a debt collector to a consumer); *Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22, 26 (2d Cir.1989) (such notification must occur in "all communications"). The fact that the FDCPA

---

6. Where specific action is threatened for non-payment, the least sophisticated debtor might feel that he has no other option but to pay, in which case such threats have been found to overshadow the validation notice and cause the debtor to overlook his statutory right to dispute the debt. However, this is not such a case. *See, e.g., Barrientos v. Law Offices of Mark L. Nichter*, 76 F.Supp.2d 510, 514–15 (S.D.N.Y.1999) (language that debt collector was authorized " 'to take any lawful action we deem necessary to collect this debt' and urged Plaintiff to 'make payment today so we can put this matter to rest' " violated section 1692g(a)).

7. Plaintiff's counsel's assertion at oral argument that *Fedotov v. Roach and Associates*, P.C., 2005 WL 266462 (S.D.N.Y. Feb.3, 2005) assists his client's position is unpersuasive since the holding in that case was limited to the narrow determination that the plaintiff had standing to assert claims under the FDCPA. The court in *Fedotov* therefore did not address the plaintiff's substantive FDCPA claims.

8. Defendant's argument is predicated solely on the fax header contained on the two collection letters which have transmission dates of September 19 and October 19. Other than speculation, Defendant offers no evidence that Plaintiff actually sent them to her attorney on those dates even if this was somehow relevant.

has a statutory provision which requires a debt collector to include specified language in every communication sent to a consumer other than the validation notice, demonstrates that it must only be sent once. *See, e.g., Sosa v. Alvarez–Machain,* —— U.S. ——, —— & n. 9, 124 S.Ct. 2739, 2754 & n. 9, 159 L.Ed.2d 718 (2004) (party's position not accepted where it "runs afoul of the usual rule that when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended") (internal quotations and citation omitted); *Smaldone v. Senkowski,* 273 F.3d 133, 137 (2d Cir.2001) (same), *cert. denied,* 535 U.S. 1017, 122 S.Ct. 1606, 152 L.Ed.2d 621 (2002).

■ Plaintiff's argument that the Follow-up Letter overshadows the validation notice because Defendant will use "every means available" to collect the debt, and Plaintiff should send payment in full or "call ... at once," is unpersuasive. (Pl. Mem. at 7). In support of her position, she cites *Savino,* 164 F.3d 81, in which the Second Circuit held that a second collection letter sent within the 30–day validation period violated the Act because it demanded "immediate payment" and therefore could reasonably be interpreted to contradict the right to dispute the debt. Plaintiff's argument misses the mark because unlike the letter in *Savino,* the Follow-up Letter did not state or imply that payment was due immediately.[9] To the contrary, it merely advised Plaintiff that in

the event that she did not pay the debt or dispute it, Defendant may avail itself of any of its legal options, which included sending more collection letters and instituting legal action. Plaintiff's argument that this is unlawful is a misstatement of the law. *See* Affirmation of Adam J. Fishbein dated January 18, 2005 ¶ 14(b). As noted above, collection efforts do not have to cease during the 30–day validation notice period unless the Plaintiff disputes the debt, which she did not do here. Further, the fact that the Follow-up Letter "instructed" Plaintiff "to pay in full or call at once, even though the 30 day validation period was still in effect,"[10] did not limit her rights under the Act as her counsel argues. (*Id.* ¶ 14(c)). For example, in *Terran v. Kaplan,* 109 F.3d 1428, 1430 (9th Cir.1997), a debtor received a collection letter stating: "Unless an immediate telephone call is made ... we may find it necessary to recommend to our client that they proceed with legal action." Providing a rationale which is peculiarly apposite here, the court held that in the collection letter "[t]he request that the debtor telephone the collection agency does not contradict the admonition that the debtor has thirty days to contest the validity of the debt. This language simply encourages the debtor to communicate with the debt collection agency. It does not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of his debt." *Id.* at 1434. The language in the Follow-up Letter is there-

**9.** *Chauncey v. JDR Recovery Corp.,* 118 F.3d 516, 519 (7th Cir.1997), the only other case cited by Plaintiff, does not assist her either. In that case, the Seventh Circuit affirmed the district court's holding that a collection letter which required that a consumer's payment be received within the 30–day period, "thus requiring plaintiff to mail the payment prior to the thirtieth day to comply," would essentially rewrite the Act and limit the time in which the consumer has the right to either pay or

dispute the debt. This issue has no bearing on the collection letters which Defendant sent Plaintiff in this case.

**10.** Construed in the light most favorable to Plaintiff, the Follow-up Letter did not demand that she pay the debt "at once," only that if she did not make payment, she was asked to call Ashwood immediately.

fore not incompatible with the § 1692g(a) notice.

Against this background, and viewing the collection letters from the perspective of the "least sophisticated debtor," the Court determines as a matter of law that they do not overshadow or contradict the validation notice.

## IV. Claims that the Follow-up Letter Contained Threatening, Deceptive or False Representations

■ Plaintiff claims that the collection letters threatened action which could not legally be taken or was not intended to be taken, in violation of § 1692e(5), and used false and deceptive representations to collect the debt owed, in violation of § 1692e(10). In evaluating whether a debt collection letter violates § 1692e, this court views the communication through the eyes of a reasonable, least sophisticated consumer. *Russell*, 74 F.3d at 34.

■ Plaintiff claims the First Letter violates § 1692e(10) because it threatens to report the unpaid debt to a collection bureau after 30 days. "A collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell*, 74 F.3d at 35. The statement that it is Defendant's policy "to report all unpaid accounts to a major credit bureau after 30 days of this notice" has only one meaning, and Plaintiff has not proffered any evidence that it is inaccurate. The letter states that it is a collection letter and to the extent that it threatens action, it merely reflects Defendant's policy, unrelated to Plaintiff's response, and reinforces the widely known fact that failure to pay debts that are owed might adversely affect one's credit rating and ability to obtain credit. *See Wright v. Credit Bureau of Georgia, Inc.*, 555 F.Supp. 1005, 1007 (N.D.Ga.1983) (citing *Harvey v. United Adjusters*, 509 F.Supp. 1218, 1221 (D.Or. 1981)). The letter is therefore not abusive, deceptive, or threatening. The least sophisticated consumer would thus not be deceived or misled by the letter.

■ Next, Plaintiff claims that the Follow-up Letter violates § 1692e(5). She argues that the phrase "[i]t is our intent to pursue collection of this debt through every means available" was a threat that could not be made or was not intended to be carried out. However, during discovery, Defendant stated that at the time of the drafting of the Follow-up Letter, it had not firmly decided what steps, if any, it would take to collect the unpaid debt but was considering the full range of options:

> Defendant has many options available to it in attempting to collect a debt from a debtor, all valid pursuant to the terms of the FDCPA. Defendant can send further written correspondence to the debtor requesting payment, can place telephone calls to the debtor requesting payment, can forward claims to attorneys for either litigation or demand letters to be sent from the attorney's office in what is known as a 'letter series' (requests for payment letters sent out of the attorney's office).

Bailey Aff. ¶ 18 (citing and quoting Defendant's Response to Plaintiff's First Set of Interrogatories). Defendant's statement therefore cannot be considered a threat that it did not intend to carry out. *See generally Goldberg v. Transworld Systems, Inc.*, 164 F.3d 617, 1998 WL 650793, at * 1 (2d Cir. Sept.9, 1998) (unpublished opinion) ("The commencement of a lawsuit regarding a $16 debt, while unlikely, is not—as this demonstrates—unheard of").

Plaintiff has also not submitted any evidence to support her contention that this statement was a threat that it could not make. Further, because the Follow-up

Letter was neither deceptive nor false, it does not violate § 1692e(10).

## V. Plaintiff's Motion to Dismiss Defendant's Counterclaim for Attorney's Fees

Plaintiff moves to dismiss Defendant's counterclaim for attorney's fees pursuant to Fed.R.Civ.P. 13(a), arguing that it is "not mandatory and did not arise out of the same transaction or occurrence that precipitated the debtor's claim, specifically, the unlawful conduct of the collection agency, but rather focused on the plaintiff's initiation of a lawsuit." (Pl. Br. at 2). Defendant did not oppose Plaintiff's motion, choosing instead to file its cross-motion for summary judgment. For that reason alone, the Court grants Plaintiff's motion.

In passing, the Court notes that there is a split of authority on the question whether a defendant may demand attorney's fees as a counterclaim in a case filed under the FDCPA. *Compare e.g., Hardin v. Folger*, 704 F.Supp. 355, 357 (W.D.N.Y. 1988) (defendant may not request attorney's fees by counterclaim, but must wait and make a motion for fees at the conclusion of plaintiff's case) *with e.g., Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir.1989) (affirming the district court's decision to hear "counterclaim" for attorney's fees but rejecting it). The issue is really an academic one, because even though the Court dismisses the counterclaim, Defendant is still entitled to move for attorney's fees after entry of this Memorandum and Order if it believes that it satisfies the applicable standard. *See* 15 U.S.C. § 1692k(a)(3) (court may order plaintiff to pay defendant's attorney's fees on a finding that the action "was brought in bad faith and for the purpose of harassment"); *see generally Kahen–Kashani v. National Action Financial Services, Inc.*,

2004 WL 1040384, at *7 (W.D.N.Y. Apr. 12, 2004) (denying claim for attorney's fees under FDCPA where defendant "has not provided evidence of plaintiff's bad faith (as opposed to allegation of plaintiff's counsel's bad faith) ... and even if this Court wished to attribute counsel's conduct to the client, defendant has not proved the second element, that the suit was instituted for the purpose of harassment").

### CONCLUSION

For the foregoing reasons, Defendant's cross-motion for summary judgment and Plaintiff's motion to dismiss Defendant's counterclaim are granted, and Plaintiff's crossmotion for partial summary judgment is denied. Accordingly, the Clerk of Court is respectfully directed to close this case.

SO ORDERED.