**Joseph D. SMITH and Deborah E. Smith, Plaintiffs,**

v.

**FINANCIAL COLLECTION AGENCIES, Defendant.**

**Civ. A. No. 90–120 LON.**

United States District Court, D. Delaware.

April 10, 1991.

O. Randolph Bragg, of UAW–GM Legal Services Plan, Newark, Del., for plaintiffs.

Phebe S. Young of Bayard, Handelman & Murdoch, Wilmington, Del., for defendant.

LONGOBARDI, Chief Judge.

This is an action for actual and statutory damages brought by Plaintiffs Joseph and Deborah Smith against Defendant Financial Collection Agencies ("FCA") alleging various violations of the Fair Debt Collections Practices Act (the "FDCPA"), 15 U.S.C. § 1692. Defendant has moved for partial summary judgment on the question of whether two letters sent to the Plaintiffs by the Defendant are in conformance with the validation notice and debt collection warning provisions of the FDCPA. The Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

## I. FACTS

By correspondence dated March 4, 1989, Defendant FCA sent a letter to Plaintiffs demanding payment of a $206.45 debt allegedly due to J.C. Penney Co. Docket Item ("D.I.") 1, Exhibit ("Ex.") A. Three weeks later, by correspondence dated March 25, 1985, Defendant sent a second letter demanding payment of the alleged debt. *Id.*, Ex. B. Defendant's employees are also alleged to have made several harassing telephone calls to the Plaintiffs. *Id.* at 2. During the purported telephone calls, it is alleged that Plaintiff Deborah Smith requested that Defendant cease further telephone communication but that Defendant failed to do so. *Id.* Defendant denies that such phone calls occurred. D.I. 14 at 3.

## II. LEGAL STANDARD

Defendant has moved for partial summary judgment on the issue of whether certain language included in the letters sent by the Defendant was in conformance with 15 U.S.C. §§ 1692g and 1692e(11). Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party establishes that there is no genuine issue of material fact that can be resolved at trial and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Materiality is determined by the substantive law which governs the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Following a determination that no disputes of material facts exist, the moving party must demonstrate that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

Once the moving party has made and supported their motion, the "adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that

there is a genuine issue for trial." Fed. R.Civ.P. 56(e). Any doubts as to the existence of genuine issues of fact will be resolved against the moving party and all inferences to be drawn from the material it submits will be viewed in the light most favorable to the party opposing the motion. *Norfolk Southern Corp. v. Oberly*, 632 F.Supp. 1225, 1231 (D.Del.1986) (citing *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)), *aff'd*, 822 F.2d 388 (3rd Cir.1987). If the evidentiary record supports a reasonable inference that the ultimate facts may be drawn in favor of the responding party, then the moving party cannot obtain summary judgment. *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 258 (3rd Cir.1983), *rev'd on other grounds*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

In response to Defendant's motion for partial summary judgment, Plaintiffs propound three arguments as to why partial summary judgment for the Defendant is inappropriate. Plaintiffs' first contention is that there is a genuine issue of material fact which precludes summary judgment. Plaintiffs' second contention is that the demand for payment in Defendant's correspondence impermissibly overshadows the disclosure of Plaintiffs' consumer rights in violation of section 1692g. Plaintiffs' third argument is that the demand for payment in Defendant's correspondence impermissibly overshadows the debt collection warning in violation of section 1692e(11). Plaintiffs have also asserted a cross-motion for summary judgment on the above issues as well as on the ground that Defendant used false representations or deceptive means in its correspondence in violation of section

1692e(10). The Court will address each of these contentions in turn.

### A. *Genuine Issue of Material Fact*

■ In support of their argument that partial summary judgment is inappropriate based on a disputed issue of material fact, Plaintiffs assert that in addition to mailing the two letters, Defendant also placed several harassing phone calls. D.I. 16 at 6. Because the making of the telephone calls is disputed and will require an adjudication by the jury, Plaintiffs conclude that it is appropriate for the jury to also determine the propriety of the contents of Defendant's correspondence. *Id.*

Plaintiffs' argument demonstrates a fundamental misunderstanding of the summary judgment standard. As stated previously, "[o]nly disputes over facts that might affect the outcome of the suit *under the governing law* will properly preclude the entry of summary judgment." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510 (emphasis added). Thus, it is not simply whether there is a disputed material fact with regard to any issue but rather whether there is a disputed fact in connection with law to be applied to a given issue. As there is no factual dispute in connection with the sending of the letters and the language that they contain, the Court concludes that the denial of partial summary judgment on this ground is inappropriate.

### B. *Section 1692g*

■ Section 1692g(a) of the FDCPA provides that within five days after an initial communication in connection with the collection of any debt, a debt collector must send the debtor a written notice containing certain information regarding debtor rights.[1] The notice is not required to be

---

1. The statute reads in pertinent part that the debtor must be informed of:

    (1) the amount of the debt;

    (2) the name of the creditor to whom the debt is owed;

    (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

    (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

    (5) a statement that, upon the consumer's written request within the thirty-day period,

sent in a subsequent communication if it is contained in the initial communication or if the consumer has already paid the debt.

The stated purpose behind the debt validation provisions is to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S.Rep. No. 382, 95th Cong.2d Sess. 4, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1699. The validation provision, considered by the drafters to be a "significant feature of [the] legislation", grants debtors the right to obtain verification of a debt from the collector of that debt and thus minimize instances of mistaken identity or mistakes as to amount or existence of a debt. *Id.* In the instant case, the three validation notice provisions are section 1692g(a)(3)–(5) which notify the debtor of his right to dispute the debt, his right to obtain written validation of the debt and his right to obtain the name and address of the original creditor if different from that of the current creditor.

■ Generally, a validation notice will comport with section 1692g if the "content" of the notice complies with the literal terms of the statute. At a minimum, this requires that the validation notice is actually included with either the initial communication or within five days of the initial communication, *Carrigan v. Central Adjustment Bureau, Inc.*, 494 F.Supp. 824, 827 (N.D.Ga.1980); *Wright v. Credit Bureau of Georgia, Inc.*, 548 F.Supp. 591, 596–97 (N.D.Ga.1982); *West v. Costen*, 558 F.Supp. 564, 580 (W.D.Va.1983), and if included, that it contains all the information dictated by the statute. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th Cir.1982); *In re Scrimpsher*, 17 B.R. 999, 1004 (Bkrtcy. N.D.N.Y.1982). *See also Harvey v. United Adjusters*, 509 F.Supp. 1218, 1221 (D.Or. 1981) (defendant's choice of validation notice language cannot impose additional burdens on the debtor).

In addition to the above "content" requirements, almost all courts addressing this issue also require that the "form" of the notice not be "inconspicuous." *Riveria v. MAB Collections, Inc.*, 682 F.Supp. 174, 177 (W.D.N.Y.1988) (if notice is required, "it cannot be so hidden as to preclude all but the most persistent or lucky from finding it"); *Ost v. Collection Bur., Inc.*, 493 F.Supp. 701, 703 (D.N.D.1980) (no reference to notice on face of form when combined with small, onerous to read, print size "point[ed] to a deliberate policy on the part of the collector to evade the spirit of the notice statute, and mislead the debtor into disregarding the notice"); *but cf., Blackwell v. Professional Business Services*, 526 F.Supp. 535, 538 (N.D.Ga.1981) (statute looks only to the content of the notice and not to the format, type size, location or "conspicuous" position). Under this line of cases, a validation notice satisfies the statute if the information given in the notice is large enough to be easily read and sufficiently prominent to be noticed, even by the least sophisticated debtor. *Baker*, 677 F.2d at 778.

■ Besides looking at the sufficiency of the notice language, some courts have recently begun to examine the form and content of the surrounding demand language. The primary focus of this inquiry is to determine whether the substance and form of the surrounding language stands in "threatening contradiction" to the notice and thus "grossly overshadows" the notice language. *See, e.g., Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225–26 (9th Cir.1988).

In *Swanson*, the leading case utilizing this analysis, the plaintiff received a dunning letter containing, in bold faced type several times larger than the required debt validation notice, the following prominently displayed message:

**IF THIS ACCOUNT IS PAID WITHIN THE NEXT TEN DAYS IT WILL NOT BE RECORDED IN OUR MASTER**

---

the debt collector will provide the consumer with the name and address of the original creditor, if different from that of the current creditor.

15 U.S.C. § 1692g(a).

FILE AS AN UNPAID COLLECTION ITEM.

A GOOD CREDIT RATING—IS YOUR MOST VALUABLE ASSET.

*Id.* at 1225.

Based on the form and content of this language, the *Swanson* court held that:

> The prominence and message of the "master file" and "most valuable asset" language, lead the least sophisticated debtor, and quite probably even the average debtor, only to one conclusion: he must ignore his right to take 30 days to verify his debt and act immediately or he will be remembered as a deadbeat in the "master file" of his local collection agency and will, accordingly, lose his "most valuable asset," his good credit rating.

*Id.* at 1226.

Similarly, in *Colmon v. Payco–General American Credits, Inc.*, No. N–89–217, Dorsey, J. (D.Conn. June 7, 1990), the District Court reviewed a debt collection communication which included on the face of the letter a statement that "THIS IS A DEMAND FOR IMMEDIATE FULL PAYMENT OF YOUR DEBT." The communication went on to state:

> YOUR SERIOUSLY PAST DUE ACCOUNT HAS BEEN GIVEN TO US FOR IMMEDIATE ACTION. YOU HAVE HAD AMPLE TIME TO PAY YOUR DEBT, BUT YOU HAVE NOT. IF THERE IS A VALID REASON, PHONE US AT (201) 981–9600 TODAY. IF NOT, PAY US—NOW.

The word NOW was printed across the page in large letters, assertedly 126 point type. The plaintiff in *Colmon* argued that the debt collector's demand language impermissably detracted from the validation notice in that it contradicted and obscured the notice language.[2] The plaintiff further argued that a demand for payment prior to the expiration of the thirty day validation period was designed to discourage the consumer from exercising his or her right to challenge the validity of the debt.

After reviewing the *Swanson* decision, the *Colmon* court noted that the demand letters sent by the defendant did not threaten "harm" if the plaintiff did not pay immediately or within three days.[3] Moreover, the court observed that the plaintiff had cited no authority "for the proposition that a debt collector cannot demand payment of a due debt before expiration of the validation period." *Id.* at 9. The *Colmon* court commented that the statute simply did "not require a debt collector to 'cease collection of the debt' until the consumer has had 30 days to dispute the debt and has received verification." *Id.* After finding that the first communication clearly referred the plaintiff to the reverse side of the letter where the statutory validation rights were stated, the court held that neither the form nor the content of the initial demand letter overshadowed or nullified the validation notice and thus 1692g was not violated.

Just twelve days later, in *Gaetano v. Payco of Wisconsin, Inc.*, No. 89–220, Daly, J. (D.Conn. June 19, 1990), a different judge in the same district issued a conflicting decision on a collection notice nearly identical to the one in *Colmon*. As in *Colmon*, the court was not persuaded that the demand language on the front of the collection notice or the first paragraph on the reverse side, when examined through the eyes of the least sophisticated debtor, obscured either the notice to see the reverse side of the document or the debt validation notice itself. What troubled the

---

**2.** A second demand letter was sent approximately three weeks after the first. In that letter, the defendant stated:

> WE CAN UNDERSTAND CIRCUMSTANCES THAT MAY DELAY FULL PAYMENT OF YOUR ACCOUNT.
> WE DON'T UNDERSTAND YOUR LACK OF COOPERATION OR RESPONSE. WITHIN 72 HOURS, PAY THE BALANCE IN FULL OR CALL US AT (201) 981–9600 TO ARRANGE TERMS.

The number 72, approximately three inches high, was also placed under the message.

**3.** *See, e.g., Swanson,* 869 F.2d at 1225 (stating that the "reference to the undefined 'master file,' juxtaposed with the admonition that Swanson's credit rating was his 'most valuable asset,' cannot reasonably be interpreted as anything but a threat").

court, however, was the inclusion by the debt collector of the statement "IF THERE IS A VALID REASON [YOU HAVE NOT PAID], PHONE US AT (414) 784–6565 TODAY" in its initial communication to the debtor and in a follow-up communication one week later. *Id.* at 11. The court also noted that the follow-up communication lacked any debt validation notice or reference to the notice initially given.

Based on the debt collector's statement that the debtor call "today" if there was a valid reason for nonpayment, the *Gaetano* court concluded that "such a statement fundamentally contradicts and detracts from the requirement that, to dispute the validity of the debt or any portion thereof, the consumer must do so in *writing.*" *Id.* at 13 (emphasis original). The court went on to state that a "consumer calling the defendant would not be exercising her validation rights and would not be entitled to the statutory cessation of debt collection activities (with respect to that portion of the debt that is disputed)." *Id.* Moreover, the court found that because the second notice contained no restatement of the prior debt validation language or any reference to the important information on the back of the first collection notice, the least sophisticated consumer would be "confused" by the defendant's attempt to comply with section 1692g. Accordingly, the *Gaetano* court held that the debt collector violated section 1692g and granted plaintiff's motion for summary judgment on the issue.

While the *Swanson* court did observe that "to be effective, the notice must not be overshadowed *or contradicted* by other messages or notices appearing in the initial communication from the collection agency", *Swanson*, 869 F.2d at 1225 (emphasis added), this statement is dicta at best because the *Swanson* court did not rest its decision on this ground. Moreover, neither case cited by the *Swanson* court in support of the above dicta actually stands for the proposition that a contradiction in terms creates a 1692g violation. Finally, the undeniable gist of *Swanson* is that regardless of the fact that notice had been given, the overall effect of the form and content of the letter was to coerce the debtor into disregarding his validation rights. *Swanson*, 869 F.2d at 1226 (stating that the "prominence and message of [the demand language] lead the least sophisticated debtor ... only to one conclusion: he must ignore his right to take 30 days to verify his debt"). Thus, the crucial finding in *Swanson* was not that the debt collector contradicted the language of the notice but rather that "the substance of the language [stood] in *threatening* contradiction to the text of the debt validation notice." *Id.* (emphasis added).

The Court also finds that the language and intent of the FDCPA statute support a "threatening contradiction" rather than mere "contradiction" analysis. First, the Court finds the FDCPA inherently contradictory in that a debt collector's lawful right to collect a debt will always conflict with a debtor's lawful right to dispute the validity of that debt. Second, there is nothing in the statute that indicates that a debt collector's initial communication to a debtor must consist solely of the debtor's validation rights. Indeed, section 1692g expressly provides that a debt collector may send a demand letter and then take up to five days to inform the debtor of his or her rights. Simply because the debt collector informs and demands in the same letter does not magically transform the communication into a 1692g violation. Finally, it is clear that Congress intended the FDCPA to function "without imposing unnecessary restrictions on ethical debt collectors." S.Rep. No. 382, 95th Cong.2d Sess. 1, 2, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1696. *See also Hubbard v. National Bond and Collection Associates, Inc.,* 126 B.R. 422 (D.Del.1991). Accordingly, the Court respectfully declines to follow the holding of the *Gaetano* court.[4]

---

4. The Court also notes that the *Gaetano* court's holding is somewhat logically inconsistent. For instance, how can a debt collector's demand for payment prior to the thirty day validation period not violate the statute while a request to telephone the debt collector does. It would appear to this Court that either both of these demands violate the statute or neither one does.

■ Turning to the allegations in the instant case, Plaintiffs argue that the validation notice is set out at the bottom of the letter in the smallest print on the page. Plaintiffs contend that in much larger type, Plaintiff Joseph Smith is instructed to call Defendant "IMMEDIATELY" and that his account has been placed for "immediate collection." Furthermore, Plaintiffs assert that the letter states that: "Our client has instructed us to commence with all the collection means at our disposal" and that Plaintiff is "URGED TO REMIT AT ONCE." Plaintiffs argue that the overall visual effect of the letter is that the validation notice is "grossly dwarfed" by these other messages and that "the least sophisticated debtor" is inescapably led to only one conclusion: he must immediately contact the Defendant to pay or arrange to pay the alleged debt or that all the collection means at Defendant's disposal would be commenced. D.I. 17 at 9–10.

The Court finds the demand language utilized in the present case is much milder than *Swanson* in that the debtor is only "urged" to remit. Moreover, while the debtor is informed that the Defendant has been authorized to commence "all the collection means at our disposal", this moderate "threat", if that, is tempered by the statement "If at all possible, we are prepared to collect this account without inconvenience to you." Clearly, this language cannot be compared to the demand language in *Swanson* where the debtor was given the option of paying the alleged debt within ten days or being labelled a "deadbeat." *Swanson*, 869 F.2d at 1226.

In addition, the Court finds that Defendant's letter also meets the minimum "form" prerequisites discussed previously. For example, the validation notice provisions at issue contain all the requisite statutory information in easy to understand language. Further, the notice language is on the front of the letter in type which is not microscopic, illegible or otherwise onerous to read. In other words, the notice provisions are "large enough to be easily read and sufficiently prominent to be noticed—even by the least sophisticated debtor." *Swanson*, 869 F.2d at 1225. Given that the debtor can see, read and understand the notice together with the Court's conclusion that there is nothing else in the communication that would prevent the debtor from exercising his or her statutory rights, the Court holds that the form and content of Defendant's demand letter are not in violation of section 1692g.

## C. *Section 1692e(11)*

■ Defendant has also moved for partial summary judgment on the ground that the language required by 1692e(11) is included in the letters sent by Defendant and not overshadowed by any contradictory language or threat. D.I. 14 at 4.[5] In response, Plaintiffs argue that the form and content of Defendant's demand for immediate payment greatly overshadow Defendant's recitation of the debt collection warning. D.I. 16 at 11.[6]

The Court is somewhat puzzled as to how a demand for payment of a debt stands in "threatening contradiction" to a warning that the communication is for the collection of a debt. If anything, a demand for payment would only reinforce that observation. Without a threatening contradiction, if that is indeed possible, the Court cannot hold that a debt warning set out on the front of the letter, in easy to read language and in typeface at least as large as some of the demand language is violative of the statute. Accordingly, Defendant's partial motion for summary judgment on the ground that the language required by 15

---

5. In both communications to the Plaintiffs, Defendant included the following language: "This is an attempt to collect a debt. Any information obtained will be used for that purpose." D.I. 14, Ex. A.

6. Section 1692e(11) states that:
   Except as otherwise provided for communications to acquire location information under

section 1692b of this title, the failure to disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.
15 U.S.C. § 1692e(11).

U.S.C. § 1692e(11) is included in the correspondence sent by Defendant and is not overshadowed by any contradictory language or threat is granted.

## D. *Cross–Motions*

Plaintiffs moved for the first time in their answering brief that partial summary judgment be granted in their favor on the above issues and that the Court also grant partial summary judgment on the ground that Defendant's letters of March 4 and 25, 1989, contain deceptive means to collect a debt in violation of 15 U.S.C. § 1692e(10). D.I. 16 at 11–12. The Court notes, however, that there was no notice of a cross-motion filed with the Court with respect to this matter as required by Federal Rule of Civil Procedure 7(b) and Rule 3.1(A) of the Local Rules of Civil Practice for the United States District Court for the District of Delaware. Accordingly, the Court will not consider the issues raised by Plaintiffs at this time. *See, e.g., Levy v. City of New York,* 726 F.Supp. 1446, 1457 (S.D.N.Y.1989).

## IV. CONCLUSION

Defendant's motion for partial summary judgment on the ground that the correspondence sent by Defendant to the Plaintiffs is not violative of section 1692g is granted. Defendant's motion for partial summary judgment on the ground that the correspondence is not violative of section 1692e(11) is also granted. Plaintiffs' cross-motions for partial summary judgment are denied as premature.