Carolyn HARRISON, on behalf of herself
and all others similarly situated,
Plaintiff,

v.

NBD INC., National Education Corp.,
and International Correspondence
Schools, Inc., Defendants.

No. CV 96–4797(ADS).

United States District Court,
E.D. New York.

June 30, 1997.

Adam J. Fishbein, Uniondale, NY, for Plaintiff.

Edelman & Combs, Chicago, IL, for Plaintiff; Cathleen M. Combs, Linda Y. Sherif, of counsel.

Sutherland, Asbill & Brennan, L.L.P., New York City, for Defendants; Anthony J. Costantini, of counsel.

### MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This action was commenced by the plaintiff, Carolyn Harrison (the "plaintiff"), on behalf of a putative class, seeking statutory damages pursuant to the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq.*, from the defendants NBD Inc. ("NBD"), National Education Corp. ("NEC"), and International Correspondence Schools, Inc. ("ICS") (collectively, the "defendants"), for the mailing by NBD to the plaintiff of a letter which the plaintiff alleges contains language contrary to the statute's requirements.

Presently before the Court is a motion by the defendants: (1) to dismiss the amended complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted; and (2) for costs and fees expended to date in this action, if the defendants prevail in the present motion. If the defendants' motion to dismiss is granted, the plaintiff seeks leave to file and serve a second amended complaint.

## I. BACKGROUND

According to the original complaint filed with the Court on September 30, 1996, the plaintiff is a resident of Roosevelt, New York. NBD is a Delaware corporation with a principal place of business in Scranton, Pennsylvania. The principal purpose of NBD is the collection of debts due to others. NBD uses the mails in conducting this business. NEC is a Delaware corporation with a principal place of business in Irvine, California. The principal purpose of NEC is the operation of correspondence schools and providing other education services. NEC operates ICS and owns 100% of NBD.

The plaintiff received a letter from NBD dated May 21, 1996 (the "letter"), the purpose of which was to collect an alleged debt of $247.86 that the plaintiff incurred with ICS. The plaintiff contracted with ICS for a home study course. The demand stated that the plaintiff could receive a special discount of $86.75, for a discounted amount due of $161.11, if she paid by June 21, 1996. The plaintiff alleges that this overshadows or contradicts the validation notice as required by the FDCPA, 15 U.S.C. § 1692g.

Second, the plaintiff alleges that the demand purports to come from NBD, an independent collection agency, by stating, "[y]our account with ICS is severely delinquent and has been referred to us for collection." Complaint ¶ 14. The plaintiff alleges that NEC is a "debt collector" subject to the FDCPA because it is uses NBD's name to collect a debt, conveying "the impression that a third-party collection agency is involved in collecting the debt, when this is not the case." Complaint ¶ 22. NEC is alleged to have caused and approved such deception. The plaintiff maintains that this alleged act is in violation of 15 U.S.C. § 1692e(10).

Third, the plaintiff alleges that the amount of the debt is overstated in the letter. The plaintiff's total tuition fee for the course at ICS was $2,008.00. In December, 1994, the plaintiff paid a down payment of $29.00, leaving a balance of $1,979.00. The plaintiff completed 11.7% of the course. Multiplying the percent completed by the total tuition, the plaintiff calculated her liability at $253.68. However, the letter also lists $1,979.00 as the "balance due". The plaintiff acknowledges that if she "now elected to continue with the course, she would owe the $1,979.00 figure upon completion." Complaint ¶ 16. The plaintiff alleges that the amount of the debt is overstated and misleading, in violation of 15 U.S.C. § 1692e(2), (10), because the letter deceptively states that the "balance due" is $1,979.00. In addition, the plaintiff alleges that she is acting on behalf of a class of similarly situated consumers whose rights have been violated.

With NBD and NEC's consent and the approval of this Court, the plaintiff filed an amended complaint on April 16, 1997. The only substantive difference between the original and amended complaint is the addition of ICS as a defendant. ICS is alleged to be "one of three operating entities of NEC, which offers distance education in vocational academic and professional studies to consumers and companies throughout the world." Amended Complaint ¶ 7. ICS, in addition to NEC, is alleged to have caused and approved the deception by NBD of holding itself out as if it were an independent, third party collection agency, when, in fact, NEC and ICS are the debt collectors using NBD's name.

## II. DISCUSSION

### A. *Standard of review*

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' ". *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir. 1985) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052–53 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The Second Circuit stated that in deciding a Rule 12(b)(6) motion, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken". *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d

Cir.1993); *see also Paulemon v. Tobin,* 30 F.3d 307, 308–09 (2d Cir.1994); *Rent Stabilization Ass'n of the City of New York v. Dinkins,* 5 F.3d 591, 593–94 (2d Cir.1993) (citing *Samuels,* 992 F.2d at 15).

It is not the Court's function to weigh the evidence that might be presented at a trial, the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman,* 754 F.2d at 1067, and in doing so, it is well settled that the Court must accept the allegations of the complaint as true, *see LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice", Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (citing *Scheuer, supra,* 416 U.S. at 235–36, 94 S.Ct. at 1686). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citing *Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686).

It is within this framework that the Court addresses the present motion to dismiss.

B. *Applicability of the FDCPA to the defendants*

 As a threshold matter, before the Court determines whether the plaintiff has validly stated claims of violation the of FDCPA, the Court must determine whether the FDCPA is applicable to each of the defendants. The FDCPA prohibits abusive debt collection practices by "debt collectors". *See* 15 U.S.C. § 1692(e); *Cavallaro v. Law Office of Shapiro & Kreisman,* 933 F.Supp. 1148, 1152 (E.D.N.Y.1996). "Debt collectors" include

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6) (West 1982 & 1997 Supp.).

 Congress targeted situations where natural constraints would fail to inhibit debt collection practices:

> Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them.

S. Rpt. No. 95–382, 95th Cong., 1st Sess., reprinted in 1977 U.S.Code Cong. & Admin. News 1695, 1696. Therefore, generally, the FDCPA does not apply to creditors. *See Young v. Citicorp Retail Services, Inc.,* No. CIV. 3:95CV1504, 1997 WL 280508, at *4 (D.Conn. May 19, 1997); *Krutchkoff v. Fleet Bank, N.A.,* 960 F.Supp. 541, 548 (D.Conn. 1996); *Teng v. Metro. Retail Recovery, Inc.,* 851 F.Supp. 61, 66 (E.D.N.Y.1994); *James v. Ford Motor Credit Co.,* 842 F.Supp. 1202, 1207 (D.Minn.1994), *aff'd,* 47 F.3d 961 (8th Cir.1995); *Meads v. Citicorp Credit Services, Inc.,* 686 F.Supp. 330, 333 (S.D.Ga.1988). However, the FDCPA provides that a creditor would be deemed a "debt collector" for purposes of the FDCPA, if it collects its own debts by using "any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). In that situation, the natural restraint discussed above, would not constrain the creditor. In addi-

tion, the FDCPA excludes a debt collector that acts

> ... as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts.

15 U.S.C.A. § 1692a(6)(B) ("Section 6(B)").

The plaintiff's amended complaint alleges that the principal purpose of NBD is the collection of debts due others while using the mails in conducting its business. ICS, the creditor, and NBD are related by common ownership by NEC. The plaintiff's amended complaint is premised on the fact that the demand or dunning letter purported to come from an independent collection agency, NBD. The plaintiff alleges that ICS is a "debt collector" as defined by the FDCPA since it attempted to collect its own debt under another name, NBD, indicating that a third party was collecting the debt. The plaintiff maintains that NEC is an appropriate defendant since NEC, "the parent corporation of both ICS and NBD, was aware of and directed the collection efforts undertaken by NBD for the benefit of both ICS and NEC." Plaintiff's Supplemental Memorandum to Defendants' Motion to Dismiss ("Plaintiff's Supp. Mem.") at 2. In addition, the plaintiff maintains that she and "... other correspondence school students interacted with NEC under the ICS name." Id. The defendants dispute whether NEC and ICS are "debt collectors" and hence, subject to the FDCPA. The defendants also maintain that no substantive violations of the FDCPA occurred.

### 1. NBD

The plaintiff's amended complaint alleges that the principal purpose of NBD is the collection of debts due others while using the mails in conducting its business. The demand letter is from NBD and it attempts to collect a debt on behalf of ICS. The Court finds that the plaintiff has adequately pled that NBD is a "debt collector", as that term is defined by 15 U.S.C. § 1692a(6), and that the Section 6(B) exemption is inapplicable to NBD.

The Court finds the following cases discussing the Section 6(B) exemption to be instructive. In *Meads v. Citicorp Credit Services, Inc.,* 686 F.Supp. 330 (S.D.Ga.1988), Citicorp Credit Services, Inc. ("CCSI"), attempted to collect a debt that the plaintiffs incurred on their VISA credit card account. The credit card was issued by Citibank (South Dakota), N.A. ("Citibank"). CCSI and Citibank are wholly-owned subsidiaries of Citicorp. Although CCSI was the only named defendant, the plaintiffs argued that Citibank was attempting to collect a debt by using a name other than its own, indicating that a third party was attempting to collect the debt.

The court in *Meads* held that CCSI and Citibank were both excluded under the FDCPA under Section 6(B). *Meads, supra,* 686 F.Supp. at 334. With regard to CCSI, it was collecting debts for Citibank with whom it was related by corporate control. CCSI's principal function was the solicitation and marketing of credit accounts, not debt collection. Finally, CCSI serviced only Citicorp affiliates. The court stated that "[t]he exclusion expressly permits an entity who is not the actual creditor to collect the creditor's debts if it meets the exclusion's requirements...." *Id.* (emphasis in original).

Likewise, in *Young v. Lehigh Corp.,* No. 80 C 4376, 1989 WL 117960 (N.D.Ill. Sept.28, 1989), the plaintiff claimed that the defendant, Lehigh Corp., was a "debt collector" under the FDCPA since it collected the debts of a third party, Lehigh Country Club, Inc., a subsidiary of Lehigh Corp. The court held that the defendant, Lehigh Corp., was exempt under Section 6(B) since the corporations were "related by common ownership or affiliated by common control." *Id.* at *22. The plaintiff had not alleged that Lehigh Corp.'s principal business is the collection of debts or that it collected the debts for other non-affiliated entities. *Id.*

In *Little v. World Financial Network, Inc.,* Civ. No. N–89–346, 1990 WL 516554 (D.Conn. July 26, 1990), World Financial Network, Inc. ("WFN") mailed the plaintiff a letter in an attempt to collect a debt that the plaintiff incurred on her Lane Bryant credit

card. Lane Bryant and WFN were subsidiaries of The Limited, Inc. The court in *Little* rejected the contention that WFN fell within the Section 6(B) exemption, stating that

> [t]he evidence before the Court indicates that WFN's primary purpose is the collection of debts, and also that WFN collects debts created by the extension of credit "by Lane Bryant and others."

*Id.* at *4. Hence, WFN failed to meet both requirements of the Section 6(B) exemption.

■ In the present case, while the plaintiff alleges that NBD is related to ICS by common ownership by NEC, she also alleges that the principal business of NBD is the collection of debts. Unlike *Meads* and *Young*, the plaintiff's latter allegation is sufficient to overcome the applicability of the Section 6(B) exemption. Therefore, the Court finds that the plaintiff has alleged that NBD is a "debt collector", as defined by the FDCPA.

### 2. ICS

ICS is the entity which extended the credit to the plaintiff and on whose behalf NBD attempted to collect the debt. Although a creditor is generally not covered by the FDCPA, the plaintiff reasons that ICS is subject to the FDCPA because it attempted to collect the debt under a different name, NBD, indicating that a third party was collecting the debt. The corporate affiliation between ICS and NBD is not disclosed in the letter. Therefore, the plaintiff maintains that ICS is a "debt collector" subject to the FDCPA. The Court finds this argument unpersuasive.

In cases where a creditor collected its own debts by using a different name, thus implying that a third party was the debt collector, the creditor controlled almost all aspects of debt collection, see *Young v. Citicorp Retail Services, Inc.*, No. CIV. 3:95CV1504, 1997 WL 280508 (D.Conn. May 19, 1997) (creditor was "debt collector" subject to the FDCPA where creditor, not attorney, operated automated system that selected accounts for mailing, printed and mailed the attorney's letters from its office, and any responses or payments elicited from those letters were received and handled directly by the attorney and the creditor, but through communication channels maintained by the creditor), or used an alias, *see Pressman v. Southeastern Financial Group, Inc.*, No. CIV. A. 94–5244, 1995 WL 710480, at *2 (E.D.Pa. Nov.30, 1995) ("If a creditor uses an alias, then the creditor falls within the definition of 'debt collector'."); *see also Maguire v. Citicorp Retail Services, Inc.*, No. 3:95CV2113, 1997 WL 280540, at *3 (D.Conn. May 19, 1997).

■ This Court finds *Meads, supra,* illuminating on the issue of whether ICS is a "debt collector". The court in *Meads, supra,* held that neither the debt collector, CCSI, nor the creditor/corporate affiliate, Citibank, were debt collectors under the FDCPA. *Meads, supra,* 686 F.Supp. at 334. That court stated that "[t]he creditor is not collecting the debt under an assumed name; rather, a separate and excludable entity is collecting the debt." *Id.* Although ICS' corporate affiliate, NBD, is alleged as a debt collector, the Court finds that a factual situation, similar to *Meads,* exists in the present case. ICS, like Citibank in *Meads,* is not a "debt collector" under the FDCPA merely because it retains its corporate affiliate to collect its debt. The plaintiff alleges that NBD and ICS are subsidiaries of NEC. NBD and ICS are two distinct entities. Nowhere in the plaintiff's amended complaint is it alleged that the two corporations are, in reality, one single economic entity or that ICS controls NBD's debt collection process. The alleged "approval" by ICS of NBD's collection practices is insufficient as a matter of law, to convert ICS' status as creditor to that of "debt collector". The plaintiff has not cited, nor is this Court aware, of any cases wherein a creditor that "approves" of a debt collector's practices is transformed into a "debt collector" under the FDCPA.

Clearly, a creditor which retains a non-affiliated debt collector would not be subject to the FDCPA. *See Young, supra; Krutchkoff, supra; Teng, supra.* This Court declines to broaden the tenets of the FDCPA to convert a creditor which retains a separate and distinct entity to collect it debts, albeit a corporate affiliate, into a "debt collector", regardless of whether the affiliation is disclosed.

The cases cited by the plaintiff in support of its argument that ICS and NEC are "debt collectors" as defined under the FDCPA, are unpersuasive. It is this Court's view that those cases are readily distinguishable for the following reasons. *Grammatico v. Sterling,* No. 91–CV–467 (N.D.N.Y. Dec. 27, 1991), is a transcript of an oral decision on the defendant, Sterling, Inc.'s, motion for summary judgment rendered by the Honorable Thomas J. McAvoy. The defendant was collecting a debt allegedly incurred by the plaintiff to the defendant's subsidiary, Kay Jewelers. Judge McAvoy rejected the contention that the defendant was exempt under Section 6(B). Kay Jewelers, the creditor, was not a defendant in *Grammatico.* In addition, Judge McAvoy did not indicate, *in dicta,* whether Kay Jewelers would be liable under the FDCPA as a "debt collector." At most, *Grammatico* merely suggests that NBD is a debt collector and that the Section 6(B) exemption is inapplicable. However, it sheds no insight on whether ICS or NEC should be considered "debt collectors" under the FDCPA.

In *Vernon v. B.W.S. Credit Services, Inc.,* No. CV79–L–21 (D.Neb. Feb. 25, 1980), the defendant, Beneficial, was the parent corporation of Spiegel and B.W.S. Although the court in *Vernon* rejected the contention that the defendant, Beneficial, was exempt under Section 6(B), this Court cannot discern what precedential value, if any, to give *Vernon* due to the paucity of facts provided by the *Vernon* court in its slip opinion. The *Vernon* court stated that "[a]n even more fundamental reason for denying this part of the motion to dismiss is that the plaintiff does allege that Beneficial participated in acts which violated 15 U.S.C. § 1692j." *Id.* at 3 (emphasis in original). 15 U.S.C. § 1692j provides the furnishing of certain deceptive forms violative of the FDCPA. In the present case, the plaintiff does not allege a violation of 15 U.S.C. § 1692j. Moreover, this Court is left to ponder what that plaintiff's factual allegations were and if they are distinguishable from those in the present case.

The facts of *Britton v. Weiss,* No. 89–CV–143, 1989 WL 148663 (N.D.N.Y. Dec.8, 1989), are also distinct from the case before this Court. In *Britton,* an attorney who was an employee of the creditor, New York Telephone Company, was held to be a "debt collector" under the FDCPA since the least sophisticated customer may view the letter as from an independent attorney, thus involving a "more serious step in the collection process". *Id.* at *2.

Finally, the plaintiff in the present case relies upon an FTC opinion letter dated Sept. 19, 1985, which stated that

> [t]he Commission staff has stated that it would generally be a violation of 807(10) for a creditor to use a controlled entity to collect its own debts under a name that conveys the impression that a third party is collecting the debts.

Thus, the FTC staff commentary rejected the applicability of the Section 6(B) exemption to a corporation and its wholly-owned subsidiary when the subsidiary also operates as the parent corporation's debt collector. However, the FDCPA expressly prohibits the FTC from promulgating "trade regulation rules or other regulations with respect to the collection of debts by debt collectors...." 15 U.S.C. § 1692l(d). This Court is not bound by such advisory opinions. *See Heintz v. Jenkins,* 514 U.S. 291, 296, 115 S.Ct. 1489, 1492, 131 L.Ed.2d 395 (1995).

The Court recognizes that the FDCPA is a remedial statute which should be liberally construed.

> The [Consumer Credit Protection] Act [of which the FDCPA is a part] is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*Cirkot v. Diversified Financial Systems, Inc.,* 839 F.Supp. 941 (D.Conn.1993) (quoting *N.C. Freed Co. v. Bd. of Governors,* 473 F.2d 1210, 1214 (2d Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973)). However, this Court is unwilling to expand the applicability of the FDCPA based solely upon an FTC advisory letter. The FTC advisory opinion has no basis in the legislative history of the FDCPA and "falls outside

the range of reasonable interpretations of the Act's express language". *See Heintz, supra,* 514 U.S. at 298, 115 S.Ct. at 1492–93. The Court finds that ICS is not a "debt collector" as defined by the FDCPA. Therefore, the defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted, is granted.

### 3. *NEC*

█ A parent corporation will not be liable for the violations committed by its subsidiary absent special circumstances that the corporations should be deemed a single economic enterprise. *See Moore v. National Account Systems, Inc.,* No. 3:91CV00035, 1991 WL 313896, at *1 (D.Conn. Nov.13, 1991); *U.S. v. ACB Sales & Service, Inc.,* 590 F.Supp. 561, 574 (D.Ariz.1984). "Under such circumstances, the subsidiary is so dominated by the parent company that it is merely an instrumentality of the parent." *Moore, supra,* 1991 WL 313896, at *2.

█ In the present case, the plaintiff's complaint alleges that NBD is a wholly-owned subsidiary of NEC. NEC cannot be liable for any violation by NBD of the FDCPA unless: (1) NBD is dominated by NEC to the extent that they constitute a single economic enterprise, *see id.;* (2) NEC controlled almost all aspects of NBD's debt collection, *see Young, supra,* 1997 WL 280508; or (3) NBD is an alias for NEC, *see Pressman, supra,* 1995 WL 710480, at *2. The plaintiff's complaint does not contain any factual allegations to support any of the above three theories. It merely alleges that NEC approved of the collection demand form used by NBD and that NEC caused and approved of NBD and ICS' deception. The issue of whether the letter discloses the corporate affiliation between NBD and NEC is of no importance in this analysis. The plaintiff's allegations are insufficient to state a claim that NEC is a "debt collector" under the FDCPA. Therefore, the defendants' motion to dismiss the complaint as to the defendant, NEC, pursuant to Fed.R.Civ.P. 12(b)(6), is granted.

### C. *NBD's liability under the FDCPA*

#### 1. *Overshadowing of the validation notice*

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors...." 15 U.S.C. § 1692(e); *Cavallaro v. Law Office of Shapiro & Kreisman,* 933 F.Supp. 1148, 1152 (E.D.N.Y.1996). The plaintiff brought this action based on an alleged violation of, among others, 15 U.S.C. § 1692g ("Section 1692g"), which provides in relevant part:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

█ The Act imposes strict liability unless the debt collector can demonstrate that its violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adopted to avoid any such error. *See* 15

U.S.C. § 1692k(c); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33–34 (2d Cir.1996). A single violation of the Act is sufficient to impose liability. *Cavallaro*, 933 F.Supp. at 1153 (citing *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir.1993)).

When applying Section 1692g, the Court uses an objective standard, evaluating how the "least sophisticated consumer" would interpret any notice she or he received. *Russell, supra*, 74 F.3d at 34 (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993)); *see Bentley, supra*, 6 F.3d at 62. "The Act is aimed at protecting consumers in general from abusive debt collection practices and the test is how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." *Russell, supra*, 74 F.3d at 34. Applying this standard, the Court must assess whether NBD's letter "overshadowed or contradicted" the mandatory validation notice thereby making the consumer uncertain of his or her rights. *Id.* at 34–35 (citing *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991)). It is not necessary to prove that the contradiction is "threatening." *Id.* at 35.

A plaintiff's complaint alleging a violation of Section 1692g may survive a motion to dismiss if

> (1) the plaintiff pleads a contradiction between the demand language and the validation language and (2) it is possible that the plaintiff could prove that the contradiction would mislead the least sophisticated consumer into disregarding his or her rights under the validation notice.

*Beeman v. Lacy, Katzen, Ryen & Mittleman*, 892 F.Supp. 405, 412 (N.D.N.Y.1995).

The essence of the plaintiff's claim is that the May 21, 1996 letter violated Section 1692g, as interpreted by the Second Circuit in *Russell*. The letter states in relevant portion as follows:

> LET'S CLEAR THE RECORD!
> Your account with ICS is severely delinquent and has been referred to us for collection. We are extending to you this one time *opportunity* to pay a discounted amount and clear your credit record with them.
>
> From now until 06/21/96 you can save $86.75 on the liability you still owe ICS. This is a 35% savings on your outstanding debt.
>
> WATCH!——

| Balance Due | Your Liability | Discount Percent | Discounted Amount Due |
|---|---|---|---|
| $1979.00 | $247.86 | 35% | $161.11 |

> If you pay the discounted amount due by 06/21/96 we will consider this account settled and you will have no further obligation to the school. No further books, correction servicing or completion documents will be available to you. And no further letters or phone calls from us. By taking this action, your account will be closed and your credit with ICS restored. You must return this letter with your payment to comply.
>
> THIS IS A ONE TIME OFFER SO DON'T DELAY!

The bottom of the letter contains the statutorily prescribed validation notice, which states as follows:

> Unless you notify this office within 30 days after receiving this Notice that you dispute the validity of the debt or a portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days of receiving this notice, we will obtain verification of the debt and mail you a copy. If you request this office in writing within 30 days after receiving this notice, we will provide you the original creditor's name and address, if different from the current creditor. This is an attempt to collect a debt. Any information obtained will be used for that purpose.

In addition, on the upper right hand corner, the letter states:

> CLIENT: INTL CORRESP SCHOOLS
> BALANCE DUE: $1979.00
> LIABILITY DUE: $247.86

Attached to the bottom of the letter is a "special discount coupon" which sets forth the tuition balance, the amount of the discount, and the amount due on or before June 21, 1996. Above the NBD logo on the cou-

pon, it states in very small letters, "A division of national education corporation".

The plaintiff's amended complaint states that "[t]he demand stated that plaintiff could receive a special discount if she paid within less than 30 days. This overshadows, the 15 U.S.C. § 1692g notice." Amended Complaint ¶ 14. The narrow issues before the Court is whether (1) the offer of a discount (2) which expires before the thirty day validation period, violates the requirements of Section 1692g. That section requires that a consumer be given 30 days to dispute the debt, which requirement is set forth in the bottom of the letter.

In cases where the payment demand was held to be in violation of the FDCPA, the payment was required to be made within the thirty day statutory period to dispute the debt and the demand was communicated in a manner that emphasized the duty to make the payment or stated the consequences of nonpayment, misleading the debtors as to their rights under the FDPCA. In *Beeman, supra,* the defendant law firm sent a letter to a debtor stating in relevant part, "Please immediately send your remittance, in the above amount, payable to [the defendant], or communicate with us to explain your failure to do so." *Beeman,* 892 F.Supp. at 407–08. The letter continued by advising the plaintiffs of their rights under the FDCPA. Although *Beeman* was decided prior to *Russell,* Judge Pooler correctly predicted that the language at issue need only "contradict or overshadow" the plaintiffs' rights under section 1692g and rejected the reasoning of those courts finding to the contrary, requiring that the contradictory language be "threatening." *Id.* at 411 (rejecting *Smith v. Financial Collection Agencies,* 770 F.Supp. 232 (D.Del.1991)). Applying this test, the district court held that even though this language is relatively mild when compared with other cases, it "[n]evertheless ... contradicts the validation notice.... Read by itself, the second paragraph [containing the relevant language] leaves the impression that if the Beemans wished to dispute the debt, they must act immediately." *Id.* at 412.

Similarly, in *Rabideau v. Management Adjustment Bureau,* 805 F.Supp. 1086, 1089 (W.D.N.Y.1992), the consumer was sent a debt collection letter stating:

YOUR CREDITOR HAS REFERRED YOUR ACCOUNT TO OUR COLLECTION AGENCY FOR IMMEDIATE COLLECTION.

THIS IS A DEMAND FOR PAYMENT IN FULL TODAY. TO AVOID FURTHER CONTACT, RETURN THE BOTTOM SECTION OF THIS NOTICE WITH YOUR FULL PAYMENT TODAY!

The court held that this language was "contradictory to the validation notice rights available to the consumer and a misleading statement as immediate payment is not the only step which may then be taken by Plaintiff to avoid further contact." *Id.* at 1094.

Support for this conclusion is also found in other circuits. In *Miller v. Payco–General Am. Credits, Inc.,* 943 F.2d 482, 483 (4th Cir.1991), the plaintiff received a collection letter stating in relevant part, "THIS IS A DEMAND FOR IMMEDIATE FULL PAYMENT OF YOUR DEBT" and "YOUR SERIOUSLY PAST DUE ACCOUNT HAS BEEN GIVEN TO U.S. FOR IMMEDIATE–ACTION. YOU HAVE HAD AMPLE TIME TO PAY YOUR DEBT, BUT YOU HAVE NOT. IF THERE IS A VALID REASON, PHONE US ... TODAY. IF NOT PAY US—NOW." Evaluating this language, the Fourth Circuit held that

[t]he emphasis on immediate action also stands in contradiction to the FDCPA, which provides consumers a thirty day period to decide to request validation. A consumer who received Payco's form could easily be confused between the commands to respond "immediately," "now," and "today," and the thirty day response time contemplated by the statute.

*Id.* at 484.

In the present case, NBD's May 21, 1996 letter presents a different factual scenario. Section 1692g requires that a debt collection letter advise a debtor that she or he has 30 days to dispute the validity of the debt. The language contained on the bottom of the letter satisfies this requirement. The Court finds that the discount offer does not over-

shadow the validation notice for the reasons that follow.

Debt collection is not required to cease during the thirty day validation period unless the debtor has indicated to the debt collector during the thirty day period that she or he disputes the debt. *See* 15 U.S.C. § 1692g(a) (validation notice must be sent within five days after initial communication with debtor); *Rabideau, supra,* 805 F.Supp. at 1094 ("continuing efforts to collect the debt may occur within the thirty day period"); *Anthes v. Transworld Sys., Inc.,* 765 F.Supp. 162, 170 (D.Del.1991) ("language designed to encourage payment of the debt does not, in and of itself, overshadow a validation notice"); *Smith v. Financial Collection Agencies,* 770 F.Supp. 232, 237 (D.Del.1991) ("Simply because the debt collector informs and demands in the same letter does not magically transform the communication into a 1692g violation."); *Gaetano v. Payco of Wisconsin,* 774 F.Supp. 1404, 1412 (D.Conn.1990) (debt collection efforts need not cease during thirty day validation period). NBD's letter did not state that "immediate" payment was due nor does the discount offer impart the impression that the plaintiff must dispute the debt in less than thirty days or mislead the plaintiff as to her rights under the FDPCA. NBD's discount offer extended an incentive for debtors to pay their account. The fact that the discount offer expires before the thirty day validation period does not provide evidence of overshadowing. If a debtor chooses to reject the discount offer, at worst, she or he would be liable for the original amount of the debt. Consequently, the Court concludes that the least sophisticated consumer would not construe NBD's discount offer as overshadowing or contradicting the validation notice.

The plaintiff's reliance upon a recent Seventh Circuit decision is misplaced. In *Chauncey v. JDR Recovery Corporation,* No. 96–3980, 1997 WL 342900, at *3 (7th Cir. June 23, 1997), the Seventh Circuit held that a debt collector's letter which stated that "[u]nless we receive a check or money order for the balance, in full, within thirty (30) days from receipt of this letter, a decision to pursue other avenues to collect the amount due will be made", contradicts the validation notice contained in the letter, in violation of Section 1692g. In *Chauncey,* the Seventh Circuit did not hold that the mere demand of payment within the thirty day statutory period violated the FDCPA. The debt collector threatened to "pursue other avenues" if the plaintiff did not pay the debt in full in a shorter period of time than the statutory thirty days to dispute the debt. The debt collector's letter was misleading in that payment was not the only means to prevent the defendant from pursuing "other avenues to collect the debt." The debtor may simply dispute the debt. It was the demand for payment combined with the threat of the consequence of nonpayment that the Seventh Circuit held was in violation of the FDCPA.

In the present case, the plaintiff's claim for overshadowing of the validation notice is premised solely upon NBD's offer of a special discount if the debt is paid within the 30–day validation period. See Amended Complaint ¶ 14. As discussed above, this allegation is insufficient to state a claim upon which relief can be granted. Therefore, the defendants' motion to dismiss the claim of alleged violation of 15 U.S.C. § 1692g, pursuant to Fed.R.Civ.P. 12(b)(6), is granted.

### 2. *Overstatement of the debt*

The plaintiff contends that NBD's letter dated May 21, 1996 overstates the amount of the debt, in violation of 15 U.S.C. §§ 1692e(2)(A), (10). 15 U.S.C. § 1692e(2)(A) provides as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

* * * * * *

(2) The false representation of -

(A) the character, amount, or legal status of any debt . . .

The plaintiff maintains that the inclusion of the amount of $1979.00 as the "balance due" overstates the amount of the debt and is deceptive because the letter also states that the plaintiff's "liability" was $247.86. The plaintiff argues that the least sophisticated

consumer would be deceived or confused as to the amount of debt owed by the inclusion of both amounts in the letter. The Court agrees.

"[A] collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell, supra,* 74 F.3d at 35 (citing *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir.1993)). The plaintiff has conceded that she paid $29 as a down payment in December, 1994, leaving a balance of $1,979.00 and that if she "now elected to continue with the course, she would owe the $1,979 figure upon completion." Amended Complaint ¶¶ 16–17. The contract between ICS and the plaintiff includes a pro-rata reimbursement promise for students who complete part, but not all, of the course. The plaintiff calculated that she completed 11.7% of the course, and that her debt was approximately $253.68.

If the plaintiff accepts the discount offer to pay by June 21, 1996, the amount due is $161.11. However, the least sophisticated consumer may become confused as to the amount due if she or he decides to reject the discount offer or elects to dispute the debt. Although the letter states twice that the plaintiff's liability is $247.86, the letter also states three times that the "balance due" is $1,979.00. The Court finds, utilizing the least sophisticated consumer standard, that the amount due if the debtor chooses to forego the discount offer or to dispute the debt, is open to two interpretations, one of which is an overstatement of the debt. Consequently, the Court finds that the plaintiff has stated a claim for violation of 15 U.S.C. § 1692e(2), (10). Therefore, the defendants' motion to dismiss the plaintiff's complaint as to the claim for overstatement of the debt, pursuant to Fed.R.Civ.P. 12(b)(6), is denied.

D. *Attorneys' fees*

■ In their supplemental briefs, the defendants request fees and expenses incurred to date in this action. 15 U.S.C. § 1692k(a)(3) which governs the defendants' request for attorneys' fees, states in relevant part as follows:

> ... On a finding by the court that an action under this section was brought in

bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

The defendants have not shown, nor does the Court find, any evidence of "bad faith" or harassment by the plaintiff in the institution of this action. Therefore, the Court declines to award the defendants attorneys' fees pursuant to the FDCPA. *See Emanuel v. American Credit Exchange,* 870 F.2d 805, 809 (2d Cir.1989).

E. *Leave to file a second amended complaint*

In a footnote in the plaintiff's supplemental memorandum, the plaintiff requests leave to serve and file a second amended complaint pursuant to Fed.R.Civ.P. 15(a), in the instance that the Court dismisses the amended complaint. The only viable amendment that the Court foresees the plaintiff capable of making as to NEC and ICS, is the inclusion of allegations asserting that NEC and ICS controlled almost all aspects of NBD's debt collection or that these three corporate entities were, in fact, one single economic entity. The inclusion of such allegations may survive a motion to dismiss for failure to state a claim upon which relief can be granted.

## III. CONCLUSION

After receiving the submissions of all parties and hearing oral argument, and for the reasons set forth above, it is hereby

**ORDERED,** that the defendants' motion to dismiss the complaint as to the defendants, National Education Corporation and International Correspondence Schools, Inc., pursuant to Fed.R.Civ.P. 12(b)(6), is granted; it is further

**ORDERED,** that the defendants' motion to dismiss the complaint as to the defendant, NBD Inc., pursuant to Fed.R.Civ.P. 12(b)(6), is denied; it is further

**ORDERED,** that the defendants' motion to dismiss the plaintiff's claim of a violation of 15 U.S.C. § 1692g for overshadowing the validation notice, pursuant to Fed.R.Civ.P. 12(b)(6), is granted; it is further

ORDERED, that the defendants' motion to dismiss the plaintiff's claim of a violation of 15 U.S.C. § 1692e(2), (10) for overstatement of the debt, pursuant to Fed.R.Civ.P. 12(b)(6), is denied; it is further

ORDERED, that the defendants' motion for attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3), is denied; it is further

ORDERED, that the plaintiff's motion to serve and file a second amended complaint is granted. If she elects, the plaintiff has twenty days from the date of this Order to serve and file a second amended complaint; and it is further

ORDERED, that in the event the plaintiff does not serve and file a second amended complaint with regard to National Education Corporation and International Correspondence Schools, Inc., the caption is amended as follows:

SO ORDERED.